# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
September 6, 2000 Session

## JAMESENA WHITE, ET AL. v. REVCO DISCOUNT DRUG CENTERS, INC.

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Circuit Court for Knox County**
**No. 1-351-98     Hon. Dale C. Workman, Judge**

---

**No. E1999-02023-SC-R11-CV - Filed November 22, 2000**

---

We granted permission to appeal in this case to address whether a private employer may be held liable for the negligent actions of an off-duty police officer who was hired by the employer for private security purposes. In the circuit court, the defendant employer moved to dismiss the plaintiffs' wrongful death action for failure to state a claim, and the motion was granted by the trial judge. The Court of Appeals affirmed the dismissal, holding that the actions of the off-duty officer were taken in furtherance of his official duties as a peace officer, and therefore, the defendant employer could not be held liable for the officer's negligent actions. After reviewing the complaint in this case, along with the applicable legal authority, we hold that the complaint does state a claim against the defendant employer for the negligence of the off-duty officer. The judgment of the Court of Appeals is reversed, and the case is remanded to the Knox County Circuit Court for further proceedings consistent with this opinion.

### Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the Court of Appeals Reversed; Case Remanded

WILLIAM M. BARKER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined. FRANK F. DROWOTA, III, J., not participating.

A. Philip Lomonaco, Knoxville, Tennessee, for the appellants, Jamesena White, Michael L. Woodfin, James E. Woodfin, Jr., Cheryl W. Bobbit, Jacqueline D. Woodfin, Joyce C. Woodward, and Roderick Woodfin, *as next of kin and heirs of* James E. Woodfin, *deceased.*

Ronald T. Hill, Knoxville, Tennessee, for the appellee, Revco Discount Drug Centers, Inc.

### OPINION

This case arises out of the dismissal of the plaintiffs' wrongful death suit, which originated from the shooting death of James E. Woodfin by officers of the Knoxville Police Department. As alleged by the plaintiffs in their original and amended complaint, the events later giving rise to Woodfin's alleged wrongful death first began when Woodfin entered a Revco Discount Drug Store (Revco) in Knoxville, Tennessee, on May 4, 1997. While inside Revco, Woodfin caused a considerable disruption, and he was issued a misdemeanor citation for disorderly conduct by Revco's security guard, Danny Boone. After issuing the citation, Boone, who was also an off-duty police officer with the Knoxville Police Department (KPD), warned Woodfin never to return to Revco.

One month later on June 4, 1997, the manager of Revco approached Boone and informed him that Woodfin entered the store a few days earlier, contrary to Boone's earlier warning. Boone, who was working that day as Revco's security guard, then called the KPD "under the complete direction" of the Revco Manager and inquired as to the status of the May 4 citation. Boone learned that Woodfin failed to report to the jail for "booking" on May 19 as ordered by the citation and that a bench warrant had been issued for Woodfin's arrest. The complaint then alleges that after Boone told the Revco manager about the bench warrant, the manager directed Boone to go to Woodfin's apartment "to serve the bench warrant to prevent Woodfin from ever returning to Revco and to punish Woodfin for disregarding Revco's no trespass order." Before going to Woodfin's apartment, however, Boone contacted four or five uniformed KPD officers to accompany him from Revco to Woodfin's apartment.

Upon arriving at Woodfin's apartment, Boone and the uniformed officers discovered that Woodfin had locked himself inside the apartment and that he would not allow anyone to enter. One of the officers then called a maintenance person for a key to the apartment. While waiting for the maintenance person to locate the key, Boone was contacted by the Revco manager, who wanted Boone to return to the store to issue a citation to a shoplifter. Boone left the apartment, issued the citation to the shoplifter at Revco, and then returned to Woodfin's apartment.

After finally obtaining a key, Boone and the officers entered the apartment and discovered that Woodfin had locked himself in the bathroom. Woodfin warned the officers that he had a shotgun pointed at the bathroom door and that he would shoot anyone who entered. According to the complaint, one of the other officers then kicked open the bathroom door and fired his weapon, mortally wounding Woodfin in the stomach. The officers then left the apartment and, for the first time, called a police supervisor to tell him what had occurred.

The plaintiffs in this action then filed a wrongful death suit against Boone, Revco, the Knoxville police officers involved, the City of Knoxville, and the Knoxville Community Development Corporation, which leased the apartment to Woodfin.[1] The complaint alleged in relevant part that the officers were negligent in the use of deadly force against Woodfin, because

---

[1] As no issues concerning the other defendants in this case are properly before this Court, we focus only upon the allegations of the complaint relating to defendant Boone and his employment and association with defendant Revco.

such force was unreasonable and unnecessary to accomplish an arrest on a misdemeanor warrant. The complaint also alleged that the actions of the officers "escalated and aggravated the situation" and that through these actions, the officers became "the aggressors," making any use of deadly force unreasonable.

In the original complaint, the plaintiffs alleged that Boone was acting "as an agent" for Revco during the events giving rise to Woodfin's death and that Revco was therefore liable for Boone's actions under the doctrine of respondeat superior. In their amended complaint, the plaintiffs further alleged that during all times relevant to the action, Boone was working as a private security guard for Revco and that he was acting "under the direction, consent, control, and within the scope of his employment with Revco." More specifically, the amended complaint alleged that Revco directed Boone to call the KPD to check on Woodfin and that Revco directed and consented to Boone going to Woodfin's house "to prevent Woodfin from ever returning to Revco and to punish Woodfin for disregarding Revco's no trespass order." As proof of Revco's control over Boone, the plaintiffs alleged that Revco recalled Boone from Woodfin's apartment to issue a citation to a shoplifter.

Revco moved to dismiss the complaint against itself under Tennessee Rule of Civil Procedure 12.02(6), stating that the plaintiffs failed to allege sufficient facts setting forth a cause of action. The basis for Revco's motion was that because "Boone, as a matter of law, was acting solely within the scope of his duty as a police officer" when the officers sought to arrest Woodfin in his apartment, Boone could not be Revco's employee or agent. The trial court granted Revco's motion to dismiss, and the plaintiffs appealed to the Court of Appeals.[2]

The Court of Appeals affirmed the dismissal of the complaint by adopting a test that examines the nature of the activities undertaken by the police officer during the events giving rise to the cause of action. The intermediate court then found that Boone's actions in this case reflected "a vindication of a public right," thereby compelling the conclusion that Boone could only have been acting in his official capacity as a Knoxville police officer. Because Boone was not acting within the scope of his private employment with Revco at the time of Woodfin's death, the court declined to find that a cause of action had been stated against Revco under the doctrine of respondeat superior. We respectfully disagree with the judgment of the Court of Appeals, and for the reasons given herein, we hold that the original and amended complaints in this case sufficiently set forth a cause of action upon which relief may be granted. Accordingly, we remand this case to the Knox County Circuit Court for further proceedings consistent with this opinion.

## STANDARD OF APPELLATE REVIEW

---

[2] Revco's motion to dismiss was initially based upon the unamended complaint, which only alleged that Revco "*allowed* Boone . . . to go after Woodfin . . . ." (emphasis added). The trial court allowed the plaintiffs to amend their complaint to allege Revco's consent, direction, and control of Boone's actions giving rise to the wrongful death action. Even after considering the allegations contained in the plaintiffs' amended complaint, however, the trial granted Revco's motion to dismiss for failure to state a claim.

A Rule 12.02(6) motion to dismiss admits the truth of all of the relevant and material averments contained in the complaint, but it asserts that the averments nevertheless fail to establish a cause of action.  See, e.g., Stein v. Davidson Hotel Co., 945 S.W.2d 714, 716 (Tenn. 1997). Therefore, when reviewing a dismissal of a complaint under Rule 12.02(6), this Court must take the factual allegations contained in the complaint as true and review the trial court's legal conclusions *de novo* without giving any presumption of correctness to those conclusions.  See, e.g., Doe v. Sundquist, 2 S.W.3d 919, 922 (Tenn. 1999).  Because a motion to dismiss a complaint under Tennessee Rule of Civil Procedure 12.02(6) challenges only the legal sufficiency of the complaint, courts should not dismiss a complaint for failure to state a claim based upon the perceived strength of a plaintiff's proof.  See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., 986 S.W.2d 550, 554 (Tenn. 1999).  As Rule of Civil Procedure 8.01 only requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," courts should liberally construe the complaint in favor of the plaintiff when considering a motion to dismiss for failure to state a claim.  See, e.g., Pursell v. First Am. Nat. Bank, 937 S.W.2d 838, 840 (Tenn. 1996).  Although allegations of pure legal conclusions will not sustain a complaint, see Ruth v. Ruth, 372 S.W.2d 285, 287 (Tenn. 1963), courts should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief, see, e.g., Cook v. Spinnaker's of Rivergate, Inc., 878 S.W.2d 934, 938 (Tenn. 1994).

## PRIVATE EMPLOYER LIABILITY FOR ACTIONS OF OFF-DUTY POLICE OFFICERS

The issue of whether private employers may be held vicariously liable for the torts committed by an off-duty police officer employed as a private security guard appears to be one of first impression in this state.  In the typical case involving the doctrine of respondeat superior, an employer may be held liable for the torts committed by his or her employees while performing duties within the scope of employment.  See, e.g., Howard v. Haven, 198 Tenn. 572, 582, 281 S.W.2d 480, 484-85 (1955); Tennessee Farmers Mut. v. American Mut., 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992).  Although a private employer is certainly "not immune from liability for the negligent or wanton acts of an employee . . . for the reason that the employee has official status as a police officer," see Carmelo v. Miller, 569 S.W.2d 365, 367 (Mo. Ct. App. 1978), we recognize that issues stemming from the private employment of off-duty officers do not fit precisely within the typical framework of respondeat superior.  This incongruity arises largely because the special status of peace officers in this state permits an off-duty officer to act within the scope of his or her public employment, even while otherwise performing duties for the private employer.

Other jurisdictions that have examined this issue are divided as to whether, and under what circumstances, a private employer may be held liable for the actions of an off-duty officer employed as a security guard.  Irrespective of the ultimate conclusion reached, though, most jurisdictions, if not all, resolve this type of issue by looking to the "nature" of the act committed by the off-duty officer.  A majority of jurisdictions, including the Court of Appeals in this case, find that because the officer's actions giving rise to the tort were taken in the officer's official capacity, the private

employer cannot be held vicariously liable. While various rationales are used to reach this conclusion, most jurisdictions reason that the officer's actions were "official" because (1) police officers have an ever-present public duty to preserve the peace and enforce the law,[3] or (2) the officer's action was taken to vindicate a public right or to benefit the public in general.[4] In addition to these considerations, some courts have even declined to impose vicarious liability on employers based, in part, on public policy grounds, holding that employment of police officers as security guards furthers deterrence of crimes.[5]

While some jurisdictions impose liability on private employers for the actions of off-duty officers, these minority jurisdictions merely conclude that the officer was acting in a private capacity when the tort was committed. The rationales advanced to support this conclusion include (1) that the officer's actions were within the scope of his or her private employment;[6] and (2) that the officer's actions were taken in return for private compensation, contrary to a statute prohibiting private compensation for public duties.[7] Consequently, even though jurisdictions may disagree as to the proper resolution of any given case, virtually all jurisdictions ultimately follow a nature-of-the-act approach in determining private employer liability for the actions of an off-duty officer employed as a security guard.

### 1. Analysis Focusing Upon the Nature of the Officer's Actions

Upon due consideration, we decline to strictly analyze this issue according to the nature of the officer's actions, as this approach does not closely comport with existing Tennessee law. When analyzed in terms of current Tennessee law and practice, the nature-of-the-act analysis has three primary shortcomings. First, this type of analysis fails to take into account the fact that many of the actions taken by officers in Tennessee to "vindicate public rights" may also be lawfully taken by private citizens to serve other interests. For example, police officers in Tennessee do not possess the exclusive authority to make arrests, as private citizens possess this power in many of the same circumstances as officers on official duty. See Tenn. Code Ann. § 40-7-109 (1997) (listing grounds

---

[3] See, e.g., Lande v. Menage Ltd. Partnership, 702 A.2d 1259, 1261 (D.C. 1997); Tapp v. State, 406 N.E.2d 296, 301 (Ind. Ct. App. 1980); Lovelace v. Anderson, 730 A.2d 774, 781 (Md. Ct. Spec. App. 1999); State v. Glover, 367 N.E.2d 1202, 1204 (Ohio Ct. App. 1976).

[4] See, e.g., Whitley v. Food Giant, Inc., 721 So. 2d 207, 209 (Ala. Civ. App. 1998); State v. Kurtz, 278 P.2d 406, 408 (Ariz. 1952); State v. Wilen, 539 N.W.2d 650, 658 (Neb. Ct. App. 1995); Glenmar Cinestate, Inc. v. Farrell, 292 S.E.2d 366, 369-70 (Va. 1982).

[5] See, e.g., Duncan v. State, 294 S.E.2d 365, 366 (Ga. Ct. App. 1982); State v. Brown, 672 P.2d 1268, 1269-70 (Wash. Ct. App. 1983).

[6] See, e.g., McWain v. Greyhound, 357 So. 2d 780, 781 (Fla. Dist. Ct. App. 1978).

[7] See, e.g., Cervantez v. J.C. Penny Co., 595 P.2d 975, 980 (Cal. 1975), *superseded by statute on other grounds as recognized by* Melendez v. City of Los Angeles, 73 Cal. Rptr. 2d 469, 472-73 (Cal. Ct. App.1998); Stewart v. State, 527 P.2d 22, 24 (Okla. Crim. App. 1974).

permitting arrest by private citizens). In addition, private citizens employed as security guards in Tennessee are authorized by statute to undertake many actions for private interests that also appear to be consistent with a general vindication of public rights. For example, private security guards in this state are authorized to protect

> persons and/or property from *criminal activities*, including, but not limited to:
> (A)   Prevention and/or detection of intrusion, unauthorized entry, larceny, vandalism, abuse, fire or trespass on private property;
> (B)   Prevention, observation or detection of any unauthorized activity on private property;
> (C)   *Enforce rules, regulations or local or state laws* on private property;
> (D)   Control, regulation or direction of the flow or movements of the public, whether by vehicle or otherwise on private property;  or
> (E)   Street patrol service;

See Tenn. Code Ann. § 62-35-102(16) (1997) (emphasis added). As this statute makes clear, private security guards are authorized to enforce local and state laws and to protect persons and property against general criminal activities, irrespective of whether the guard is a private citizen or an off-duty officer. Because many of these statutorily authorized activities could legitimately be viewed either as serving the interests of the private employer or as vindicating public rights, analysis focusing on the "nature" of the act may not provide a meaningful basis upon which to impose vicarious liability on the private employer.

Second, just as the majority approach that looks to the official nature of the officer's actions ignores that private citizens in Tennessee can perform many of the same actions as police officers, an approach that looks to the private nature of the officer's actions ignores that police officers in Tennessee still possess the full panoply of "official" police power, even when they are off duty.[8] Indeed, this benefit is one of the considerable advantages of employing off-duty officers as private security guards, and we are unwilling to restrict the powers of an off-duty officer solely to accommodate a test that examines the nature of the acts committed. For the same reasons that we reject a test denying vicarious liability when the off-duty officer performs "official actions," we must

---

[8] For similar reasons, we are reluctant to ground liability for private employers solely on the fact of private payment as do some minority jurisdictions. See, e.g., Cervantez v. J.C. Penny Co., 595 P.2d 975, 980 (Cal. 1975), *superseded by statute on other grounds as recognized by* Melendez v. City of Los Angeles, 73 Cal. Rptr. 2d 469, 472-73 (Cal. Ct. App.1998); Stewart v. State, 527 P.2d 22, 24 (Okla. Crim. App. 1974). This approach ignores the reality that working for a private employer does not weaken an officer's continuing authority and ability to act as a peace officer. Moreover, while the police officers in this case are not continuously on official duty, they are frequently subject to being summoned for official duty at any time. See, e.g., Knoxville City Code § 19-29. As such, situations can arise where a police officer is summoned for official duty or otherwise acts in an official capacity as a peace officer, even though the officer is still technically on the payroll of the private employer. To hold that a private employer may be vicariously liable for the acts of a police officer simply because of an overlap of employment schedules does not comport with basic notions of fairness. Therefore, while this rationale may be attractive for some jurisdictions, we believe that this approach over- simplifies the practical realities of our state law-enforcement practices and could result in unjust determinations in some cases.

necessarily reject a rule that holds private employers liable in situations solely because the acts committed by the off-duty officer were "private" in nature.

Third, while most states decline to impose vicarious liability on private employers because police officers have a continuous duty to keep the peace and enforce the law, we can find no corresponding statute or rule of law in this state that places a mandatory duty upon police officers to keep the peace when "off duty." To the contrary, when officers are "off duty," our statutes generally treat the officer as an ordinary private citizen and not as an agent or employee of the municipal police department under a general duty to keep the peace. See, e.g., Tenn. Code Ann. § 38-8-351 (1997) (allowing officers to participate in political activities when "off-duty and acting as a private citizen," but not when the officer is "on duty or acting in such officer's official capacity"); Tenn. Code Ann. § 38-8-303 (1997) (making distinction between "the performance of the officer's official duties" and the officer's "off-duty [private] employment" for purposes of disclosure in official investigations). Consequently, to the extent that a nature-of-the-act analysis focuses upon some continuous duty of police officers to keep the peace, that analysis is impractical in this state.

Of course, to say that officers do not continuously function in an official capacity is not to say that off-duty officers are prevented from assuming a duty to remedy a breach of the peace, or that officers are incapable of being summoned to official duty by the municipality. Cf. Knoxville City Code § 19-29. Nevertheless, it is clear that officers are not under a general duty to enforce the law while "off duty," cf. Ezell v. Cockrell, 902 S.W.2d 394, 403 (Tenn. 1995) (stating that an officer's ability to arrest at any time does not give rise to a duty to do so, but "only delineate[s] the general authority and responsibility of police officers"), and a blanket rule declaring that police officers are under a never-ending duty to keep the peace is contrary to existing Tennessee law. We therefore decline to use this rationale in determining the scope of private employer liability.

For these reasons, we conclude that a test examining the nature of the officer's actions to resolve the question of employer liability is probably unworkable within the current framework of Tennessee law. No doubt because of the practical difficulty in determining the proper nature of the actions committed by a security guard, this test has resulted in over-insulating private employers who would otherwise be subject to liability if the security guard were not also employed by a municipal police department. While a few states in minority jurisdictions have held employers liable under this approach, the vast majority of jurisdictions using this approach have held that private employers are not liable. We are unwilling to provide such practical immunity for private employers based only upon negligible distinctions concerning the "nature" of the officer's conduct.

*2. Public Policy Grounds for Denying or Imposing Private Employer Liability*

Several jurisdictions have also used public policy considerations to hold that private employers are not liable for the actions of off-duty officers employed as security guards. These jurisdictions generally reason that because deterrence of crime is furthered by employing police officers, private employers should be encouraged to hire such officers as security guards. See, e.g., Duncan, 294 S.E.2d at 366; Brown, 672 P.2d at 1269. In its most basic sense, therefore, these

-7-

jurisdictions have decided to grant practical immunity to private employers in exchange for the perceived benefit derived from private employers hiring off-duty officers as security guards.

Although we agree that deterrence of crime may be rationally furthered by the hiring of off-duty officers, we also recognize that some level of deterrence is provided simply by hiring private security guards, irrespective of whether the guards are off-duty officers or private citizens.[9] Moreover, eliminating vicarious liability for private employers who hire off-duty police officers encourages such employers to shift their risk of liability to the municipality solely because their employees are also employees of the local police department. As jurisdictions following a nature-of-the-act approach recognize, at least implicitly, the private employer would have been vicariously liable for the torts of its security guard except for the fact that the security guard is also a municipal police officer. As such, allowing liability based only upon the official status of the employee undermines the modern rationale of vicarious liability, which according to Professor Keeton, is the result of "deliberate allocation of risk." W. Page Keeton, et al., Prosser and Keeton on Torts § 69, at 500 (5th ed. 1984). This allocation of risk is

> placed on the employer because, having engaged in an enterprise, which will on the basis of all past experience involve harm to others through the torts of employees, and sought to profit by it, it is just that [the employer], rather than the innocent injured plaintiff, should bear [the risk]; and [liability is placed on the employer] because [the employer] is better able to absorb [the risks], and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large.

Id. § 69, at 500-01.

Under the majority rule, the private employer may take advantage of the benefits of hiring an off-duty officer without assuming any of the normal risks of liability associated with hiring non-officer employees. We simply do not believe that in many cases, the risk of loss is properly shifted from the private employer to the municipality or to an innocent plaintiff, and we therefore disagree with the public policy rationales advanced by many of our sister jurisdictions that have adopted the majority rule on this issue.

### 3. Advantages of Agency Law

After due consideration, we conclude that issues of employer liability for the acts of off-duty police officers are best resolved under traditional principles of Tennessee agency law. Use of agency

---

[9] With the rule we announce today, we doubt that private employers will suddenly forgo hiring off-duty officers merely for fear of liability, because the advantages of hiring off-duty officers include their training in law-enforcement practices and their ability to perform some duties that ordinary citizens cannot. So long as employers continue to hire security guards, either private citizens or off-duty officers, we find that deterrence will be served irrespective of liability issues. Accordingly, we give little additional consideration to this issue in deciding whether private employers should be held liable for the actions of off-duty officers employed as security guards.

principles in Tennessee to resolve this complex issue has several advantages. First, because traditional agency principles have been used in this state for two centuries, they possess the advantages of experience and straightforward application. In addition, these principles do not depend upon the splitting of legal hairs into meaningless distinctions, which is a hallmark of many of the other approaches.[10]

Second, and most importantly, use of traditional agency law to resolve these types of issues corresponds most closely with prior case law from this Court. Although the issue of private employer liability for the acts of a municipal police officer employed in a private capacity is an issue of first impression in this state, this Court has previously addressed this same question in terms of private employer liability for the torts committed by a *special* police officer commissioned by a municipality for a particular assignment. In Terry v. Burford, 131 Tenn. 451, 175 S.W. 538 (1915), this Court applied traditional agency principles to hold the private employer vicariously liable for the torts committed by the officer, notwithstanding the officer's special commission from the municipality. See also Union Ry. Co. v. Carter, 129 Tenn. 459, 166 S.W. 592 (1914).

Although these cases do not directly control the decision in this case because of the important distinction between special officers and regular police officers—special officers usually only have the complete authority and powers of regular officers to the extent allowed by the special commission, cf. Tenn. Code Ann. § 8-8-212(b) (1997)—these cases are certainly persuasive authority for applying traditional agency principles to the issues involving regular officers as well.[11] For these reasons, we conclude that issues concerning employer liability for torts committed by off-duty police officers employed as security guards are to be resolved according to traditional Tennessee agency principles.

### GENERAL PRINCIPLES OF TENNESSEE LAW OF AGENCY

Having decided that this case should be resolved with reference to Tennessee agency law, it may be necessary to review the relevant principles of agency. In its broadest sense, the concept of agency "includes every relation in which one person acts for or represents another." Kerney v. Aetna Cas. & Sur. Co., 648 S.W.2d 247, 253 (Tenn. Ct. App. 1982). An agency relationship does not require an explicit agreement, contract, or understanding between the parties, Warren v. Estate of Kirk, 954 S.W.2d 722, 725 (Tenn. 1997), and when "the facts establish the existence of an agency

---

[10] Moreover, the minority approach that looks to whether the act of the officer was committed within the scope of private employment is too restrictive in its approach to assigning liability. Agency theory, by way of contrast, recognizes that vicarious liability may properly arise under some situations even outside the scope of private employment. See Parker v. Warren County Util. Dist., 2 S.W.3d 170, 177 (Tenn. 1999) (recognizing that the phrase "scope of employment" does not serve "as the sole basis for imposing employer liability").

[11] We believe these cases to be persuasive because special officers and off-duty officers employed as private security guards share several important characteristics. To provide a brief example, both special police officers and off-duty officers are employed only for a special purpose, usually to provide security for a private entity. In addition, the private employer of a special police officer, like that of an off-duty officer serving as a private security guard, is responsible for compensating the officers and for maintaining employee insurance. Cf. Tenn. Code Ann. § 8-8-212.

relationship, it will be found to exist whether the parties intended to create one or not." Harben v. Hutton, 739 S.W.2d 602, 606 (Tenn. Ct. App. 1987); see also Smith v. Tennessee Coach Co., 183 Tenn. 676, 680-81, 194 S.W.2d 867, 869 (1946). Whether an agency exists "is a question of fact under the circumstances of the particular case; and whether an agency has been created is to be determined by the relation of the parties as they in fact exist under their agreement or acts." McCay v. Mitchell, 62 Tenn. App. 424, 434, 463 S.W.2d 710, 715 (1970).

Important in the concept of agency, of course, is that a principal is generally "bound by its agent's acts done in its behalf and within the actual or apparent scope of the agency." V.L. Nicholson Co. v. Transcon Inv. & Financial Ltd., 595 S.W.2d 474, 483 (Tenn. 1980). The focus of this inquiry, however, is placed upon the actions and consent of the principal, rather than upon the agent's actions or the willingness of the agent to perform those actions. Haury & Smith Realty Co. v. Piccadilly Partners I, 802 S.W.2d 612, 615 (Tenn. Ct. App. 1990). Although the principal's right to control the actions of the agent is an important factor in finding the existence of an agency relationship, Jack Daniel Distillery, et al. v. Jackson, 740 S.W.2d 413, 416 (Tenn. 1987), the right of control is not necessarily as important as the principal's exercise of actual control over the agent, see Parker v. Vanderbilt Univ., 767 S.W.2d 412, 416 (Tenn. Ct. App. 1988).

Indeed, a principal may be held liable for an agent's tortious act, even if that act occurs outside of the scope of the agency, if the act was commanded or directed by the principal. See Kinnard v. Rock City Const. Co., 39 Tenn. App. 547, 551, 286 S.W.2d 352, 354 (1955). As the Kinnard Court stated the rule:

> A master is liable for the tort of his servant where the tortious act is done in obedience to his express orders or directions, even though the service is not within the line of the servant's usual duties, and provided the injury to the third person occurs as the natural, direct, and proximate result of the directed or authorized act.

Id. at 551-52, 286 S.W.2d at 354-55. The court also noted that the law did not strictly require that "the principal or master should expressly direct or have knowledge of the act done; it is enough that the servant or agent was acting in the business of his superior." Id. at 551, 286 S.W.2d at 354 (citing Luttrell v. Hazen, 35 Tenn. (3 Sneed) 20, 25 (1855)).

It is also well settled that an agent may serve two masters simultaneously, so long as the objectives of one master are not contrary to the objectives of the other. See Monroe County Motor Co. v. Tennessee Odin Ins. Co., 33 Tenn. App. 223, 241, 231 S.W.2d 386, 394 (1950). As section 226 of the Restatement (Second) of Agency states the rule, "A person may be the servant of two masters, not joint employers, at one time as to one act, if the service does not involve abandonment of the service to the other." In so doing, the person serving two masters "may cause both employers to be responsible for an act . . . . if the act is within the scope of employment for both." Id. § 226 cmt. a.

To summarize these agency principles in terms of application to the issue in this case, we conclude that private employers may be held vicariously liable for the acts of an off-duty police officer employed as a private security guard under any of the following circumstances: (1) the action taken by the off-duty officer occurred within the scope of private employment;[12] (2) the action taken by the off-duty officer occurred outside of the regular scope of employment, if the action giving rise to the tort was taken in obedience to orders or directions of the employer and the harm proximately resulted from the order or direction; *or* (3) the action was taken by the officer with the consent or ratification of the private employer and with an intent to benefit the private employer.[13]

Consistent with agency law, the private employer of an off-duty officer cannot generally be held vicariously liable for actions taken by the off-duty officer outside of the officer's regular scope of employment as a security guard. As such, when the officer is summoned to official duty by the municipality, or otherwise performs traditional police actions outside of the scope of his or her private employment, the private employer will not be generally liable. The private employer would be liable, however, for acts taken outside of the regular scope of private employment under the following two scenarios: (1) the employer ordered or directed the action; or (2) the employer gave consent to the action, which was taken by the officer with a primary intent to benefit the employer. As is the case with agency law in general, issues such as whether the officer acted within the scope of employment, or whether the officer acted at the direction or with the consent of his or her private employer, are questions of fact to be resolved by the jury.

We also recognize that under the dual master doctrine, the municipality may also be vicariously liable—along with the private employer—for the actions taken by one of its off-duty police officers. Under Tennessee agency law, liability may also be imputed to the municipality when all of the following four circumstances are present: (1) the action taken by the off-duty officer involves exercise of a traditional police power, such as the power to arrest, the power to issue citations, or the power to command aid; (2) the municipality had knowledge, either actual or constructive, of the action taken by the off-duty officer;[14] (3) the action taken by the off-duty officer

---

[12] We differ from many of the minority jurisdictions which find the actions of the officer to be "private" in nature, because we recognize that the private employer may be subject to vicarious liability even if the off-duty officer performs "official" acts within the regular scope of his or her employment as a security guard. As we stated previously, the nature-of-the-act analysis does not work well with existing Tennessee law, and private employers are not immune from liability for the acts committed by their employees merely because the employee also happens to be a municipal police officer. Employers who assume the benefits of employing off-duty officers must also assume the corresponding risk of harm for acts committed by such security guards within the scope of their employment.

[13] Because the primary focus of agency law is upon the consent of the principal to have actions taken on his or her behalf by the agent, this last scenario envisions that a private employer may be liable for actions taken by the officer to benefit the employer and of which the employer had actual knowledge and gave consent. To that extent, therefore, it is irrelevant to the analysis of this factor whether the actions were taken by the officer in the regular scope of officer's off-duty employment.

[14] This requirement is necessary to establish the aspect of control necessary for the imposition of liability. Without any knowledge by the municipality of the actions taken by the off-duty officer, no opportunity or duty to control

(continued...)

-11-

simultaneously serves the objectives of the private employer and the municipality; *and* (4) the objectives of the private employer and the municipality, which are both served by the officer's action, are not inconsistent with each other.

## DISMISSAL OF THE COMPLAINT PURSUANT TO RULE OF CIVIL PROCEDURE 12.02(6)

Because this case comes before us on a motion to dismiss for failure to state a claim, we confine our inquiry solely to the allegations of the complaint to determine whether the plaintiffs have alleged a cause of action against Revco upon which relief may be granted. After carefully examining the material allegations of the original and amended complaints, we conclude that the plaintiffs have in fact made sufficient allegations under all three agency theories, which, if proven, would give rise to vicarious liability on the part of Revco.

First, we find that the plaintiffs have made sufficient allegations to assert a cause of action against Revco based on a tort committed by Boone while acting within the course and scope of his employment with Revco. The amended complaint alleges in several paragraphs that Boone's actions were taken "within the scope of his employment with Revco," and that Boone was acting at all relevant times "under the direction, consent, and control" of Revco. The amended complaint also alleges that Revco employed Boone especially to take advantage of Boone's ability to make arrests and issue citations. Finally, as evidence of Revco's control over Boone during the relevant period of time, the complaint sets forth the fact that Boone was summoned back to Revco to issue a citation to a shoplifter even while he was attempting to enforce the city's bench warrant. Accordingly, when viewed in a light most favorable to the plaintiffs, we find that the plaintiffs have adequately stated a cause of action against Revco based on the torts of its security guard committed within the scope of his private employment.

In response, Revco asserts that because the original and amended complaints allege mere legal conclusions, the complaints cannot be sustained on a Rule 12.02(6) motion to dismiss. We disagree. A complaint "need not contain in minute detail the facts that give rise to the claim," so long as the complaint does "contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial" Donaldson v. Donaldson, 557 S.W.2d 60, 61 (Tenn. 1977). In this case, Revco may reasonably infer from the allegations contained in the complaints that the plaintiffs plan to introduce (1) evidence concerning the course and scope of Boone's employment with Revco, and (2) evidence that Boone's actions giving rise to Woodfin's wrongful death were within the course and scope of that employment with Revco. As such, we decline to dismiss the complaint for any perceived deficiency in its factual allegations, and we conclude that the plaintiffs have stated a cause of action under this agency theory.

---

[14] (...continued)

those actions can arise, and consequently, no liability can be fairly imputed to the municipality.

Second, we also conclude that the plaintiffs have made sufficient allegations to assert a cause of action based on a tort committed by Boone while in obedience to the orders or directions of Revco. First, the complaint alleges that following a conversation about Woodfin's second appearance at Revco a few days prior to June 4, the Revco manager directed Boone to check with the KPD about Woodfin's previous citation for disorderly conduct. The complaint further alleges that upon learning that a bench warrant had been issued for Woodfin's arrest, the Revco Manager directed Boone "to serve the bench warrant to prevent Woodfin from ever returning to Revco and to punish Woodfin for disregarding Revco's no trespass order." If these facts are taken as true, an agency relationship is established, and Revco would then be liable for the harm proximately resulting from Boone's actions taken in obedience to its directions, irrespective of whether Boone's actions were within the scope of his employment.[15] Accordingly, we hold that the plaintiffs' complaint has stated a cause of action against Revco for Boone's actions taken in obedience to directions issued by Revco.

Finally, we conclude that the amended complaint alleges a cause of action based upon the actions taken by Boone with the actual knowledge and consent of Revco and taken primarily for Revco's benefit. For example, the original complaint alleges that Boone attempted to arrest Woodfin after Revco "allowed" Boone to leave, which taken in a light most favorable to the plaintiffs, shows that Revco had knowledge of Boone's actions and consented to those actions.[16] The amended complaint also alleges that the purpose of Boone's actions was "to prevent Woodfin from ever returning to Revco and to punish Woodfin for disregarding Revco's no trespass order." This fact, taken in a light most favorable to the plaintiffs, shows that Boone's primary intent in undertaking the attempted arrest of Woodfin was to benefit Revco, his private employer. Consequently, because the complaint alleges that Revco knew of, and consented to, actions taken by Boone with the primary intent to benefit Revco, an agency relationship is established, and Revco is vicariously liable for the harm proximately resulting from Boone's actions. We hold, therefore, that the plaintiffs have alleged sufficient facts in support of a claim of vicarious liability based upon knowledge and consent of the principal to actions by an agent that were primarily intended to benefit the principal.[17]

## CONCLUSION

In summary, we conclude that issues concerning private employer liability for acts taken by an off-duty police officer employed as a private security guard are to be resolved according to

---

[15] The plaintiffs point out that Revco asserted actual control over Boone by ordering him to return to Revco to issue a shoplifting citation. We agree that this fact goes to show that Boone was acting according to his directions or orders issued by the Revco manager, and as such, we conclude that the complaint alleges sufficient facts to state a claim for relief under this theory.

[16] The amended complaint also specifically alleges that the Revco manager consented to Boone undertaking a mission to arrest Woodfin with the primary intent to benefit Revco.

[17] As the issue is not properly before this Court on this appeal, we express no opinion as to whether the City of Knoxville is also vicariously liable under the dual master doctrine for Boone's actions.

Tennessee agency law.  Accordingly, we hold that the complaint in this case alleges sufficient facts to state a cause of action against defendant Revco based on three separate theories: (1) that Revco is vicariously liable for the harm proximately resulting from the acts of its agent taken within the course and scope of the agent's employment with Revco; (2) that Revco is vicariously liable for the harm proximately resulting from the acts of its agent taken in obedience to directions or orders issued by Revco; and (3) that Revco is vicariously liable for the harm proximately resulting from the actions of its agent that were taken with the primary intent to benefit Revco and of which Revco knew and gave consent.  Any analysis of whether the plaintiffs have established a prima facie case of liability is premature at this time, and the facts, if any, supporting Revco's liability for Boone's actions have not been developed in this Rule 12.02(6) motion.  We therefore reverse the judgment of the Court of Appeals and remand this case to the Knox County Circuit Court for further proceedings consistent with this opinion.

Costs of this appeal are taxed to the appellee, Revco Discount Drug Centers, Inc., for which execution shall issue if necessary.

_____
WILLIAM M. BARKER, JUSTICE