IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 13, 2010 Session

## NATALIE HAGAN v. MICHAEL PHIPPS ET AL.

**Appeal from the Circuit Court for Wilson County**
**No. 2008-CV-695     Clara W. Byrd, Judge**

_____

**No. M2010-00002-COA-R3-CV - Filed September 28, 2010**

_____

This appeal involves claims by a home purchaser against a licensed contractor and a business associate of the unlicensed builder who built the home in question and sold it to the plaintiff. The trial court granted the contractor defendant's motion for summary judgment on all claims against him based upon its conclusions that the unlicensed builder was not the agent of the licensed contractor and that there was no predicate tort for civil conspiracy because the builder intended to use the house for his personal residence. Because we find that there are issues of material fact that must be resolved, we reverse the trial court's grant of summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Stephen Andrew Lund, Nashville, Tennessee, for the appellant, Natalie Hagan.

Jennifer Garman Rowlett and Marc Bradley Gilmore, Nashville, Tennessee, for the appellee, Alfred L. Hodges.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Michael Phipps owned lot 17 in the Quad Oak Valley subdivision in Wilson County, Tennessee, and built a house on the lot in 2006. Mr. Phipps did not have a contractor's license. Natalie Hagan purchased the house located on lot 17 from Mr. Phipps in April 2007. After she moved into her new house, Ms. Hagan allegedly discovered numerous construction

defects. Ms. Hagan filed this lawsuit in August 2008 against Mr. Phipps and Alfred Hodges, a licensed contractor and business associate of Mr. Phipps and whose name appears on the building permit for the house on lot 17.

In her complaint, Ms. Hagan asserted causes of action for breach of warranty, negligence, violations of the Tennessee Consumer Protection Act ("TCPA"), and civil conspiracy.[1] With respect to Mr. Hodges, the only defendant involved in this appeal, Ms. Hagan advanced two main theories of liability: (1) she alleged that Mr. Hodges was liable under respondeat superior principles for the actions of Mr. Phipps, namely for breach of warranty, negligence, and violation of the TCPA; and (2) she alleged that Mr. Hodges (and Mr. Phipps) were liable for civil conspiracy to violate the Tennessee Contractors Licensing Act and the TCPA.

Ms. Hagan filed a motion for partial summary judgment on her claim against Mr. Phipps under the TCPA and on the issue of Mr. Hodges's liability under agency principles for Mr. Phipps's conduct. In support of her motion, Ms. Hagan submitted a statement of undisputed material facts; portions of the depositions of Mr. Phipps and Mr. Hodges; and the affidavit of Pam Askew, an employee at the Wilson County Building Inspector's office. It is undisputed that Mr. Phipps went to the building inspector's office and applied for a building permit for lot 17. The permit lists Alfred Hodges as the applicant and license holder; Mr. Phipps signed the application. In her affidavit, Ms. Askew stated:

> On several prior occasions, Mr. Phipps applied for and received building permits on behalf of Mr. Hodges. Both Mr. Phipps and Mr. Hodges represented themselves to me as business partners, and when Mr. Phipps applied for the Permit [for lot 17], my understanding was that he was seeking the Permit as the business partner of Mr. Hodges, just as he had for each permit he had previously pulled.

> On March 6, 2006, I sent Mr. Hodges a letter informing him that the affidavit Mr. Phipps submitted for the Permit was unacceptable, as it was a photocopy of a previous affidavit. I also requested that he send a new affidavit in conjunction with the Permit certifying his exemption from worker's compensation insurance. I later received a newly executed Worker's Compensation Affidavit of Exemption ("Affidavit") from Mr. Hodges. . . .

---

[1] Mr. Phipps filed a third-party complaint against a company he hired to perform repairs; the third-party claim is not at issue on appeal.

The Affidavit states that it is for permit #29843 which is Lot 17 of the [Quad Oak] Valley subdivision. Mr. Hodges' signature is fixed on the Affidavit, and the affidavit is notarized.

Mr. Hodges responded to Ms. Hagan's statement of undisputed material facts. Mr. Hodges's filing includes the following pertinent statements and responses:

Mr. Phipps did not inform the Building Inspector's office that the building permit for the Residence was to be in Mr. Phipps' name.
Response: This characterization is disputed as phrased. It is admitted that Mr. Phipps stated in his deposition that he did not specify the name for the building permit, but he did state in his deposition that he told the office that he was requesting the permit in order to build his personal residence.

Mr. Hodges performed the grading work at the Residence.
Response: This characterization is disputed as phrased. It is admitted that Mr. Hodges stated in his deposition that he used his tractor to level dirt in the backyard of the residence.

Mr. Hodges checked the work being done at the Residence at least once a week to ensure it was being done properly.
Response: This characterization is disputed as phrased. Mr. Hodges stated in his deposition that he periodically checked on the progress of construction on lot 17, not out of obligation to do so, but because he was in the neighborhood all of the time and was good friends with Mr. Phipps.

Mr. Phipps decided to sell the residence during the course of its construction.
Response: Undisputed for purposes of plaintiff's motion only.

Mr. Hodges filed a motion for summary judgment and a response in opposition to Ms. Hagan's motion for partial summary judgment. In support of his motion and his response to Ms. Hagan's motion, Mr. Hodges submitted portions of his deposition and portions of Mr. Phipps's deposition.

Mr. Phipps, too, filed a response to Ms. Hagan's statement of material facts. While admitting that he did not have a contractor's license, Mr. Phipps stated that this fact was immaterial because he "built the residence purchased by the plaintiff with the intention of living there with [my] family." Mr. Phipps admitted that he had pulled a building permit for lot 68 in his own name on July 28, 2006, to build a residence and that he had sold that

residence to a third party. He further admitted that he had decided during the construction of the house on lot 17 that he would sell the residence.

Mr. Phipps opposed the summary judgment motion of Ms. Hagan and submitted his own motion for summary judgment on the plaintiff's claim under the TCPA. Mr. Phipps submitted portions of his own deposition and of the depositions of Ms. Hagan and Mr. Hodges. He also submitted an affidavit from his wife, Susan Phipps, in which she stated:

> My husband and I planned on building our dream home on Lot 17 in the Quad Oaks Subdivision in Mt. Juliet. We picked out the plans together. We picked the lot together, and selected Lot 17 because of the open back yard and a gazebo that was part of the common area. We picked out the appliances, tile and carpet together.

> My husband began building our home in 2006. In the meantime, I investigated the school system in Wilson County. I have a sixteen year old daughter with ADHD and is in a special MIP fragile program with the Metro Schools.

> I learned that Wilson County does not have the educational services or programs that my daughter needed to succeed in high school.

> Therefore, we decided at about the time that the home was complete not to move but to stay in Old Hickory so my daughter could remain in McGavock High School.

Mr. Phipps further submitted several documents, including the real estate sales contract between Mr. Phipps and Ms. Hagan.

Ms. Hagan thereafter submitted additional documents in opposition to the motions of Mr. Phipps and Mr. Hodges, including deposition excerpts and her own affidavit. In her affidavit, Ms. Hagan stated that her attorney had learned in April 2008 that Mr. Phipps did not have a contractor's license and that "[t]his was the first time I had received any information indicating that Mr. Phipps was not a licensed contractor."

In an order filed on November 10, 2009, the court ruled on the parties' cross motions for summary judgment. The court granted Mr. Hodges's motion for summary judgment as to all claims against him and ordered that this order would be a final order pursuant to Tenn. R. Civ. P. 54.02. Ms. Hagan's claims against Mr. Hodges were dismissed in their entirety. The court went on to deny Ms. Hagan's motion for partial summary judgment with respect to Mr. Phipps and to grant Mr. Phipps's motion for partial summary judgment with respect

-4-

to the plaintiff's claims for violation of the TCPA.[2]  Ms. Hagan appeals the trial court's grant of summary judgment in favor of Mr. Hodges.[3]

ISSUES ON APPEAL

On appeal, Ms. Hagan asserts that the trial court erred in granting summary judgment in favor of Mr. Hodges on all of her claims against him.  She makes two arguments.  She argues that the trial court erred in finding that Mr. Phipps was not Mr. Hodges's agent and in finding no predicate tort underlying her civil conspiracy claim.

STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson,* 100 S.W.3d 202, 205 (Tenn. 2003).  We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn. 2002).  When reviewing the evidence, we must determine whether factual disputes exist. *Byrd v. Hall,* 847 S.W.2d 208, 211 (Tenn. 1993).  If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Id.; Rutherford v. Polar Tank Trailer, Inc.,* 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).  To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must negate an element of the opposing party's claim or "show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.,* 270 S.W.3d 1, 8-9 (Tenn. 2008).

---

[2]In its order, the court also ruled that Mr. Phipps's motion for summary judgment on the claim for civil conspiracy should be granted.  Mr. Phipps's motion did not, however, mention the claim for civil conspiracy.

[3]Ms. Hagan previously sought and received from the trial court permission to seek an interlocutory appeal of the trial court's denial of her motion for partial summary judgment and its grant of summary judgment to Mr. Phipps on the TCPA claims.  However, this court denied Ms. Hagan's application for an interlocutory appeal.

ANALYSIS

Respondeat superior

The trial court found that, based upon the undisputed facts, "Mr. Phipps was not the agent of Mr. Hodges." The court therefore granted summary judgment with respect to all claims based upon the theory of respondeat superior.

The existence of an agency relationship "does not require an explicit agreement, contract, or understanding between the parties." *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 723 (Tenn. 2000). An agency relationship will be found to exist if the facts establish it, whether that was the intention of the parties or not. *Id.* Whether an agency relationship exists "is a question of fact under the circumstances of the particular case; and whether an agency has been created is to be determined by the relation of the parties as they in fact exist under their agreement or acts." *Id.* (quoting *McCay v. Mitchell*, 463 S.W.2d 710, 715 (Tenn. 1970)). A key factor in determining whether an agency relationship exists is the principal's right to control the acts of the agent. *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 343 (Tenn. 2002); *Sodexho Mgmt., Inc. v. Johnson*, 174 S.W.3d 174, 178 (Tenn. Ct. App. 2004).

We must begin by determining whether Mr. Hodges, the party moving for summary judgment, successfully shifted the burden of production to Ms. Hagan by negating the existence of an agency relationship between Mr. Hodges and Mr. Phipps. Mr. Hodges relies upon his own deposition testimony in which he denied supervising or controlling Mr. Phipps's work on the house on lot 17. Mr. Hodges also emphasizes that he received no money in connection with the construction or sale of the home. As to the building permit, Mr. Hodges testified that he did not recall authorizing Mr. Phipps to use his license number.[4] All of the facts cited by Mr. Hodges tend to disprove the existence of an agency relationship with Mr. Phipps.

Even if Mr. Hodges's evidence shifted the burden of production to Ms. Hagan to show the existence of a genuine issue of material fact, Ms. Hagan points to other evidence that suggests the opposite conclusion. Although Mr. Phipps signed the building permit application, Mr. Hodges is listed as the applicant, and it is his license number that appears on the application. While he did not recall authorizing Mr. Phipps's use of his license number for lot 17, Mr. Hodges testified that he would not have had a problem with such an

---

[4]In his deposition, Mr. Phipps testified that he could not recall the exact conversation but he thought he had talked to Mr. Hodges about using his license number for lot 17.

arrangement because he and Mr. Phipps built houses together.[5] Moreover, there is no dispute that, when the building inspector's office sent him a letter requesting an original copy of a workers' compensation affidavit of exemption for lot 17, Mr. Hodges supplied one.[6] Mr. Hodges acknowledged that he performed some grading work on lot 17 but stated that he acted as a friend to Mr. Phipps. He further testified that he went to lot 17 at least once a week to make sure it was being done properly "out of concern for Mike [Phipps]." Other circumstantial evidence consistent with the theory that Mr. Phipps was acting as Mr. Hodges's agent includes a receipt to Mr. Hodges for the building permit fee, invoices for utilities and supplies for lot 17 billed to Mr. Hodges, a check for concrete and excavation work on lot 17 drawn on a joint account of Mr. Phipps and Mr. Hodges, and a receipt for a storm water permit for lot 17 paid by CTM Realty & Construction, Mr. Hodges's company.

We disagree with the trial court's conclusion that Mr. Hodges was entitled to summary judgment on the issue of agency. For purposes of summary judgment, we must consider the evidence in the light most favorable to the non-movant. *Godfrey,* 90 S.W.3d at 695. The existence of an agency relationship is generally a factual question, and we cannot say that the evidence establishes the absence of agency as a matter of law. The record contains facts supporting an agency relationship and those opposing it. Resolution of the agency issue will require the weighing of evidence and the evaluation of credibility, tasks not appropriate for summary judgment. *See Byrd*, 847 S.W.2d at 216. We thus conclude that the trial court erred in determining this issue on summary judgment.

Civil conspiracy

The trial court granted summary judgment in favor of Mr. Hodges on the civil conspiracy claim based on its conclusion that there was no predicate tort for that cause of action. This conclusion was premised upon the court's finding that "[t]he undisputed facts are that this [house] was to be [Mr. Phipps's] personal residence . . . ." We must respectfully disagree with the trial court's finding that there were no material facts in dispute with regard to the intended use of the house.

A civil conspiracy has been defined as "a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an

---

[5]On the same trip to the building inspector's office, Mr. Phipps pulled permits for three other projects at the direction of Mr. Hodges.

[6]Pursuant to Tenn. Code Ann. § 13-7-211(a), the building inspector would not have been authorized to issue a permit without an affidavit of exemption or evidence of workers' compensation insurance. If, as the defendants assert, Mr. Phipps was building the house on lot 17 for his personal residence, the statute contemplates that he would submit an affidavit of exemption on that basis. Tenn. Code Ann. § 13-7-211(e).

unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002). A claim for civil conspiracy must include "an underlying predicate tort allegedly committed pursuant to the conspiracy." *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007). In this case, the plaintiff's claim for civil conspiracy relies upon the defendants' alleged violation of the TCPA, particularly Tenn. Code Ann. § 47-18-104(b)(35), which makes it a violation of the TCPA to act "in the capacity of a 'contractor' as defined in §§ 62-6-102(3)(A), 62-6-102(5) or 62-37-103(5) . . . while not licensed."[7]

There is no real question that Mr. Phipps was engaged in activities that constitute contracting within the definition of the Contractors Licensing Act ("CLA") at Tenn. Code Ann. § 62-6-102. The issue is whether Mr. Phipps was exempt from the licensing requirements under the following provision: "any person . . . that owns property and constructs on the property single residences . . . for individual use, and not for resale . . . is exempt from the requirements of [the CLA]." Tenn. Code Ann. § 62-6-103(a)(2)(A). Pursuant to Tenn. Code Ann. § 62-6-103(a)(2)(B), there is a "rebuttable presumption that the person or firm intends to construct for the purpose of resale, lease, rent or any other similar purpose if more than one (1) application is made for a permit to construct a single residence or if more than one (1) single residence is constructed within a period of two (2) years."

The undisputed facts in this case show that Mr. Phipps applied for a building permit for two houses in 2006. These facts give rise to a rebuttable presumption that these houses were built for resale (or a similar purpose) and not for personal use. In support of his motion for summary judgment, Mr. Hodges relies upon the deposition testimony of Mr. Phipps and the affidavit of Ms. Phipps that they planned to construct their personal residence on lot 17. According to the Phippses, they did not decide to sell the house until construction was underway and they discovered that the schools in that county did not have the special education services that were needed.

Mr. Hodges argues that the "unequivocal deposition testimony that [Mr. Phipps] was constructing the residence on Lot 17 for his personal home" rebutted the statutory presumption. Once the presumption was rebutted, however, the issue became a question of

---

[7]Mr. Hodge has not raised an issue with regard to whether a violation of the TCPA can constitute a predicate tort for a civil conspiracy claim. We note, however, that claims under the TCPA have been characterized as tort actions. *See Timoshchuk v. Long of Chattanooga Mercedes-Benz*, No. E2008-01562-COA-R3-CV, 2009 WL 3230961, at *9 (Tenn. Ct. App. Oct. 8, 2009); *Lipford v. First Family Fin. Servs., Inc.*, No. W2003-01208-COA-R3-CV, 2004 WL 948645, at *4 (Tenn. Ct. App. Apr. 29, 2004); *see also Danny L. Davis Contractors, Inc. v. Hobbs*, 157 S.W.3d 414, 420 (Tenn. Ct. App. 2004) (civil conspiracy claim based on allowing construction company without license to engage in contracting work).

fact to be decided by the trier of fact. *See Bd. of Prof'l Responsibility v. Curry*, 266 S.W.3d 379, 389 (Tenn. 2008); *Deavers v. Deavers*, 457 S.W.2d 618, 623 (Tenn. Ct. App. 1970). We do not consider the statements of intent of the Phippses, who are interested witnesses, sufficient to determine the issue as a matter of law. *See Godrey*, 90 S.W.3d at 696. Ms. Hagan points to facts in the record casting doubt on the veracity of the Phippses' statements, including the use of Mr. Hodges's building permit, the absence of Ms. Phipps as an obligor on the loan, and the documents described above with respect to the agency issue. Thus, a material question of fact remains as to the intent of the Phippses with respect to the use of the home.

In addition, it is undisputed that the Phippses made the decision to sell the home before construction was completed. Our Supreme Court has held that "a contractor is unlicensed for purposes of Tennessee Code Annotated section 62-6-103(b) if the contractor does not maintain a valid contractor's license throughout the entire time contracting services are performed under the contract." *Kyle v. Williams*, 98 S.W.3d 661, 666 (Tenn. 2003). It appears then that, at least as to the time period during which Mr. Phipps knew he was going to sell the house, he was acting in violation of the CLA.

For these reasons, we conclude that the trial court erred in granting summary judgment in favor of Mr. Hodges on the civil conspiracy claim.

CONCLUSION

The judgment of the trial court granting summary judgment in favor of Mr. Hodges is reversed and the matter is remanded for further proceedings. Costs of appeal are assessed against the appellee.

_____
ANDY D. BENNETT, JUDGE