# Supreme Court of Texas

No. 23-0704

Chad Seward, Home Depot U.S.A., Inc., and
Point 2 Point Global Security, Inc.,

*Petitioners*,

v.

Rogelio Santander Sr. and Julia Garcia, Individually and as
Co-Administrators of the Estate of Rogelio Santander Jr. and
Crystal Almeida,

*Respondents*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

JUSTICE BUSBY, joined by Justice Lehrmann, concurring.

Texas businesses that hire security guards are likely to wonder whether this case allows them to immunize themselves from liability for a guard's torts within the scope of employment by hiring an off-duty police officer to perform that function. That is a rational question for businesses to ask, and it is one that has important public policy implications. I write to emphasize that the Court's opinion—which I join—does not provide an answer because the parties here have not asked for one. Instead, that answer must await a different case.

Unsurprisingly, the answer has divided courts in other states. To assist future parties and courts that confront this important issue, I briefly explain the issue as framed by this case and note the approaches taken by other courts.

This is a suit for personal injuries that on-duty police officers sustained while Chad Seward, an off-duty officer, was working as a private security guard for Home Depot pursuant to its contract with Point 2 Point, a private security vendor. Plaintiffs—who sued Seward, Point 2 Point, and Home Depot under various negligence and vicarious-liability theories—allege that Seward's negligent handling of a detained suspect led to that suspect shooting the on-duty officers. Concluding that Seward was acting within the scope of his employment as a peace officer, the Court dismisses the claims against him on immunity grounds. *Ante* at 24.

The Court also reinstates the trial court's summary judgment for Home Depot and Point 2 Point on certain vicarious liability claims predicated on Seward's conduct. As the Court explains, "the trial court and the court of appeals concluded summary judgment was proper on those claims to the extent Seward was acting within the scope of his governmental employment." *Id.* The plaintiffs "do not challenge those rulings" here, instead "conced[ing] that whether a private employer can be held [vicariously] liable for an off-duty officer's conduct [that is also within the scope of his employment] as a peace officer 'is simply not an issue presently before the Court.'" *Id.*

That issue has divided courts in other states, and the relevant analytical steps and points of disagreement are laid out very clearly by

2

the Tennessee Supreme Court in *White v. Revco Discount Drug Centers, Inc.*, 33 S.W.3d 713 (Tenn. 2000). As *White* explains, some of the variety in court decisions can be attributed to differences in state law while other disagreements stem from how courts evaluate various policy considerations.

*White* begins by observing that applying traditional principles of vicarious liability for employee conduct does not provide a complete answer "largely because the special status of peace officers in [Tennessee] permits an off-duty officer to act within the scope of his or her public employment, even while otherwise performing duties for the private employer." *Id.* at 718. Texas law not only permits such action, it requires a peace officer to intervene when an individual "is about to commit an offense" within his view or presence. TEX. CODE CRIM. PROC. arts. 14.01(a), 6.06. On the other hand, we have recognized that statutes requiring action do not necessarily foreclose vicarious liability.[1]

The *White* court then considered whether the "nature of the act" approach employed by a majority of other state courts was appropriate under Tennessee jurisprudence. 33 S.W.3d at 719. This approach—which hinges upon the "nature" of the officer's actions giving rise to the alleged tort—only imposes liability upon the private employer if the officer's actions were taken to serve private interests—that is, the

---

[1] *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 540 (Tex. 2002). Adopting a relevant section of the Restatement Second of Agency, we explained the mere "fact that the state regulates the conduct of an employee through the operation of statutes requiring licenses or specific acts to be done or not to be done does not prevent the employer from having such control over the employee as to constitute him a servant." *Id.* (quoting RESTATEMENT (SECOND) OF AGENCY § 220 cmt. i (AM. L. INST. 1958)).

3

actions were "within the scope of his private employment." *Id.* If the officer's allegedly tortious conduct is considered "official" in nature, his private employer may not be held vicariously liable because "the officer's action was taken to vindicate a public right or to benefit the public in general." *Id.*

Attempting to square this test with Tennessee jurisprudence, the *White* court identified two interrelated shortcomings. *Id.* First, the test ignores that many actions deemed official in nature "may also be lawfully taken by private citizens," including the right to make arrests. *Id.* (citing TENN. CODE ANN. § 40–7–109).[2] Such acts may "legitimately be viewed either as serving the interests of the private employer or vindicating public rights." *Id.* at 720. Second, considering whether the officer's actions are private in nature "ignores the reality that working for a private employer does not weaken an officer's continuing authority and ability to act as a police officer," especially as the officer may undertake "official duty at any time." *Id.* at 720 n.8 (citing KNOXVILLE, TENN., CODE § 19–29).[3] The *White* court concluded that given "the practical difficulty in determining the proper nature of the actions committed by a security guard," the nature-of-the-act approach relies on "negligible" distinctions that raise the concern of "over-insulating private employers who would otherwise be subject to liability if the

---

[2] *See* TEX. CODE CRIM. PROC. art. 14.01 (same).

[3] *See Garza v. Harrison*, 574 S.W.3d 389, 403 (Tex. 2019) (holding that off-duty officer who observes crime immediately goes on duty "as a matter of law" under TEX. CODE CRIM. PROC. art. 6.06).

security guard were not also employed by a municipal police department." *Id.* at 721.

*White* next evaluated the minority approach, which declines to impose tort liability upon private employers for the conduct of off-duty officers employed as security guards as a matter of public policy. *Id.* Jurisdictions adhering to this approach "generally reason that because deterrence of crime is furthered by employing police officers, private employers should be encouraged to hire such officers as security guards." *Id.* (citing *Duncan v. State*, 294 S.E.2d 365, 366 (Ga. 1982), and *State v. Brown*, 672 P.2d 1268, 1269 (Wash. Ct. App. 1983)).

Acknowledging that hiring off-duty officers may indeed aid the deterrence of crime, the *White* court emphasized that this end is also served by the employment of private security in general, "irrespective of whether the guards are off-duty officers or public citizens." *Id.* And to the extent this approach enables private employers to escape liability merely because their security guards are simultaneously employed by the local police department, *White* concluded that it "undermines the modern rationale of vicarious liability" that places the risk of loss upon the employer "rather than the innocent injured plaintiff" or the municipality. *Id.* at 722 (quoting KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 69, at 500-01 (5th ed. 1984)). This "deliberate allocation of risk" is borne by the employer not only because it "set the whole thing in motion" and "sought to profit by it," but also because the employer occupies "a position to exercise some general control over the situation" and therefore "must exercise it or bear the loss." PROSSER AND

5

KEETON, *supra*, § 69, at 499-501.[4]  For those reasons, *White* also declined to adopt the minority approach.  33 S.W.3d at 722.

Having rejected the approaches taken by other jurisdictions, the *White* court took a third approach, looking to traditional principles of agency law to determine when a private employer should be subject to vicarious liability.  *Id*.  A well-developed doctrine that has the "advantages of experience and straightforward application," *White* concluded that agency also addresses many—if not all—of the drawbacks associated with the approaches previously discussed.  *Id*.

For example, while the nature-of-the-act test is ill-equipped to consistently allocate liability when the tortious conduct of the officer simultaneously serves the interests of his public and private employers, agency law recognizes the "dual master doctrine,"[5] which *White* found a workable test for deciding when one or both employers may be held vicariously liable.  *See id*. at 724-25 (quoting RESTATEMENT (SECOND) OF AGENCY § 226 & cmt. a (AM. L. INST. 1958)) ("A person may be the

---

[4] *See Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130-31 (Tex. 2018) (quoting parts of this passage).  In Texas, we have adopted "right to control" as the "supreme test" for vicarious employer liability.  *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex. 1964).

[5] *See In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 199 (Tex. 2007) (Hecht, J., concurring and dissenting) ("Whether one *can* serve two masters, the law allows it and generally makes both employers liable for the agent's actions." (footnotes omitted) (citing RESTATEMENT (SECOND) OF AGENCY § 226 (AM. L. INST. 1958))).  Although our Court has not yet decided whether to adopt this doctrine broadly, we have applied it in the workers' compensation context, and several of our appellate courts have used it under the name "co-employment" doctrine.  *See Waste Mgmt. of Tex., Inc. v. Stevenson*, 622 S.W.3d 273, 281 n.4 (Tex. 2021) (collecting cases); *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 137-140 (Tex. 2003).

servant of two masters . . . at one time as to one act, if the service does not involve abandonment of the service to the other[,]" so that "both employers [may] be responsible for an act . . . within the scope of employment for both."). *White* observed that this doctrine takes into account the practical realities of this kind of employment: because the character of security work and law enforcement work are inherently similar, many actions taken by a private security guard may fairly be considered "within the scope" of his public and private employment at the same time. *Id.* at 723 n.11. And where the nature-of-the-act test would simply excuse the private employer from liability by concluding such an act was official in nature, *White* concluded that agency law promotes public policy interests by ensuring that "[e]mployers who assume the benefits of employing off-duty officers must also assume the corresponding risk of harm for acts committed by such security guards within the scope of their employment." *Id.* at 724 n.12.

In sum, the Court correctly reserves the question whether and to what extent a private employer may be subject to vicarious liability for torts committed by an off-duty police officer it employs that are also within the scope of the officer's public employment. The *White* court provides a detailed overview of considerations relevant to that important question. I encourage parties in future cases to address those considerations, along with other relevant matters of Texas law, to help Texas courts determine the best answer. With these observations, I join the Court's opinion.

7

_____
J. Brett Busby
Justice

**OPINION FILED:** May 9, 2025