# MRS. GLADYS KINNARD v. ROCK CITY CONSTRUCTION COMPANY et al.

# CHARLES KINNARD v. ROCK CITY CONSTRUCTION COMPANY et al.—286 S. W. (2d) 352.

Middle Section.  December 2, 1955.

Petition for Certiorari denied by Supreme Court, February 3, 1956.

Williams, Harwell, Houser & Thomas, of Nashville, for plaintiffs in error Mr. and Mrs. Kinnard.

Joseph G. Cummings and Howard, Davis, Boult & Hunt, all of Nashville, for defendant in error Rock City Const. Co.

FELTS, J.   These suits grew out of a collision of automobiles.   One of the cars was owned by Charles Kinnard and driven by his wife, Gladys Kinnard.   The other was owned and driven by Earl Jenkins, an employee of the Rock City Construction Company.   The wife sued for the injuries to herself; and the husband, for loss of her services and damages to his car.

There were verdicts and judgments for plaintiffs against Jenkins.   The trial judge directed verdicts for defendant Rock City Construction Company.   Plaintiffs appealed in error; and the sole question here is whether in doing the act that caused the harm Jenkins was acting as servant of the Company.

The Company was constructing a building on the north side of Grand Avenue. The accident happened in the street in front of this construction project. Jenkins, a colored man employed by the Company on this job, had come to work that morning in his automobile and had parked it on the south side of Grand Avenue opposite the site of the construction. Other cars were parked on both sides of Grand Avenue.

On the morning of the accident a supplier of material sent one of its trucks loaded with lumber to be delivered to the Company on the site of this construction. This truck was coming west on Grand Avenue, stopped, preparing to turn into the driveway entrance to this project. To enable the truck driver to do this, he had to make a wide swing to the south side of Grand Avenue. Jenkins' parked car was in the way so the driver of the lumber truck could not make this turn.

The truck driver called this situation to the attention of the Company's superintendent on the job and said he "couldn't get in without that automobile being moved". The superintendent recognized the parked car as the car of Jenkins, and told Jenkins that "the car was in the way". It seems a fair inference that he told Jenkins to move the car out of the way and Jenkins so understood him.

Jenkins got in the car to move it out of the way. Mrs. Kinnard, driving her husband's car, was coming east, approaching from the west. Jenkins, without giving any signal or any warning, suddenly pulled out from the curb, drove his car into the Kinnard car, striking its right front door and fender, knocked it into the standing lumber truck, and caused the injuries sued for.

Thus the act that caused the harm was Jenkins' moving his car into the street. For the Company, it is urged

that this act was outside the scope of his employment and outside the service he was hired to render the Company as a common laborer; while it is argued for plaintiffs that Jenkins, in moving his car, was doing so in furtherance of his employment and with the authority, express or implied, of his master.

It may be conceded that this act of Jenkins was not within the scope of his employment—not an act he was hired to do as a common laborer. Nevertheless, we think the jury could well have found that what was said to him by the Company's superintendent about his car being in the way was intended by the superintendent, and understood by Jenkins, to be a command to move it; and that in moving it he was doing an act commanded by his employer.

This being so, it matters not that this act was outside the usual scope of his employment. It seems, at first, the master was held liable for the wrongful acts of his servant because he had commanded such acts. Later, he came to be held liable if such acts were within the scope of the employment, whether he had commanded them or not. This development is summarized by Dean Ferson as follows:

"* * * He [Dean Wigmore] points out that, in the early days, the master was held liable in cases where he had commanded his servant to do the wrong. Later, the master's command was implied if the servant did the wrong while he was about the master's business. In the final stage the master came to be held liable for the servant's acts regardless of any actual or implied command. It came to be simply a question of whether the servant was acting in the scope of his employment and in the execution of

his service. * * *" Ferson, *Liability of Master and Principal,* 4 Vand.L.Rev., 260, 263.

So, a master may be held liable for his servant's act if the act was commanded by him, though not within the scope of the employment, and also if the act was within the scope of the employment, but not commanded by him. These two grounds of liability under the doctrine of *respondeat superior* are well recognized and supported by the authorities. Wilkins v. Gilmore, 21 Tenn. 140, 141; Luttrell v. Hazen, 35 Tenn. 20, 25; Byram v. McGuire, 40 Tenn. 530, 532; 39 C. J., Master and Servant, secs. 1446, 1447, p. 1265; 57 C. J. S., Master and Servant, Sec. 557, pp. 268, 269; 35 Am. Jur., Master and Servant, sec. 532, pp. 959, 960.

"Whoever procures or commands another to commit a crime, or do a civil injury, is guilty of the offence himself, as a principal in the first degree. Hence, if a slave or a servant commit a trespass by the command or encouragement of the master, the master is guilty of it" (citing authorities). Green, J., Wilkins v. Gilmore, 1840, supra.

"Independent of the relation of master and servant or principal and agent, he who directs, counsels, or procures another to commit a tort would be liable as a principal. But where this relation exists, as in the present case, it is not necessary that the principal or master should expressly direct or have knowledge of the act done; it is enough that the servant or agent was acting in the business of his superior". Caruthers, J., Luttrell v. Hazen, supra.

In 57 C. J. S., Master and Servant, Sec. 557, p. 269, it is said:

"A master is liable for the tort of his servant where the tortious act is done in obedience to his

express orders or directions, even though the service is not within the line of the servant's usual duties, and provided the injury to the third person occurs as the natural, direct, and proximate result of the directed or authorized act".

■ ■ So, we think the evidence made it a question for the jury whether in doing the act that caused the harm Jenkins was acting as servant of the Company; and that the case should have been submitted to the jury as to the Company. The judgment of the Circuit Court is reversed and the case is remanded for a new trial not inconsistent with this opinion. The costs of the appeal in error are adjudged against defendant Rock City Construction Company. Future costs will abide the outcome.

Hickerson and Shriver, JJ., concur.