IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 14, 2004 Session

## JON E. SHELL, ET AL. v. D. SCOTT KING

**Appeal from the Chancery Court for Sevier County**
**No. 02-5-221     Telford E. Forgety, Jr., Chancellor**

_____

**No. E2003-02124-COA-R3-CV     Filed August 5, 2004**

_____

Jon and Rebecca Shell ("Plaintiffs") sued D. Scott King ("King") after a limited liability company formed by the three of them went out of business. Plaintiffs sought dissolution of the company known as The Big Red Barn, LLC ("the Company" or "the LLC"). Plaintiffs also claimed King had breached his fiduciary obligations to both them and the LLC. The Trial Court referred this case to a Special Master and after a trial, the Special Master issued a Report concluding King was negligent and had breached his fiduciary obligations and recommending that Plaintiffs be awarded a judgment which included some, but not all, of Plaintiffs' attorney fees and expert witness fees. The Trial Court confirmed the Report of the Special Master in all respects. We modify the judgment of the Trial Court and affirm as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Chancery Court Affirmed as Modified; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and WILLIAM H. INMAN, SR. J., joined.

Charles W. Kite, Sevierville, Tennessee, for the Appellant D. Scott King.

James H. Ripley, Sevierville, Tennessee, for the Appellees Jon E. Shell and Rebecca Shell.

# OPINION

## Background

King has been in the landscaping field for several years and operated Elite Landscape Management ("Elite"), a landscaping business which, among other things, installed and maintained landscaping designed by Ms. Shell. In April of 2000, the parties formed the Company, which was a limited liability company formed under the laws of the State of Tennessee. The Company was a plant nursery and garden supply outlet located in Sevierville selling plants and other materials to customers of Elite and the general public. Jon and Rebecca Shell each owned a 25% interest in the Company, with King owning the remaining 50%.

The Company closed after approximately one year. This litigation began when Plaintiffs sued King alleging the Company was unsuccessful because King breached his obligations to the LLC and Plaintiffs, breached his fiduciary obligation to Plaintiffs, and intentionally misused Company funds. More specifically, Plaintiffs claimed King: 1) neglected the Company; 2) illegally issued checks by forging the name of Ms. Shell; 3) neglected customers; 4) failed to make payments on Company indebtedness in a timely manner; and 5) falsely claimed a Company capital account was far in excess of that account's actual value. Plaintiffs sought immediate dissolution of the Company, at least $75,000 in damages, a declaration of the rights and obligations of the parties, as well as reasonable attorney fees, costs and expenses pursuant to Tenn. Code Ann. § 48-245-903. King answered the complaint generally denying any wrongdoing or liability to Plaintiffs, although he agreed dissolution of the Company was appropriate.

In June of 2002, the Trial Court entered an Agreed Order dissolving the LLC and reserving the remaining issues "pending winding up of the affairs of this limited liability company." An Agreed Order of Reference was entered by the Trial Court referring this matter to a Special Master, and a two day trial before the Special Master took place in April of 2003. The Special Master later issued a detailed Report resolving the numerous issues presented by the parties, most of which are not at issue on appeal. The issues on appeal center around whether King should be held responsible for missing Company funds and whether Plaintiffs are entitled to their full attorney fees, expert witness fees, and costs. We will limit our discussion of the facts as they pertain to these issues.

In his factual findings, the Special Master noted that pursuant to the LLC's Operating Agreement, King was the Company's Chief Manager, and it was stipulated at trial that King was the Chief Manager throughout the Company's existence. The Special Master observed that King had operated Elite for many years prior to the formation of the Company and had been involved in the

landscaping business for over a decade. Ms. Shell was a certified arborist with a horticulturist degree who had many horticultural or nursery certifications.[1]

The Special Master found the testimony at trial "conflicting and irreconcilable" as to whether King and Ms. Shell were to devote an equal amount of time to the operation of the Company, but concluded that both of them were involved extensively in setting up the Company and preparing it for retail operation. According to the Special Master, Ms. Shell was more involved in the daily operation of the Company once it was "up and running." The Special Master also discussed an agreement by the parties whereby employees of Elite would work for the Company on an as-needed basis. More specifically, the Special Master stated:

> When the parties organized the LLC[2], they agreed to use their own labor and laborers from Elite on an as-needed basis. By using this arrangement, the LLC avoided the necessity of obtaining a separate workers compensation insurance policy and avoided the difficulty of separate payroll accounting.
>
> When Mr. King paid his employees, a portion of their time based upon time card records was allocated to BRB. For each hour that an Elite employee indicated he/she had worked for BRB, BRB was then billed $15.00 per hour plus approximately 20% of this amount for "overhead", for a billed total of $18.00 per hour for labor. This per-hour billing rate was applied across the board regardless of the actual per-hour employee cost, which was substantially lower than $15.00 per hour. Mr. King stated this charge was agreed upon by the parties and disclosed to Mr. and Mrs. Shell. Mr. and Mrs. Shell deny that any such markup was ever disclosed or agreed upon, and that they had only discovered the mark-up in trial preparation.
>
> * * * *
>
> When BRB was organized, it shared office space with Elite and Mr. King employed a bookkeeper named Leslie Gibbs who worked out of this combined Elite/BRB office. Ms. Gibbs prepared daily sales reports, made BRB deposits and prepared payroll summaries stating the amount of hours and funds which the nursery was charged for Elite employee time.

---

[1] The Special Master also found that Mr. Shell, a practicing dentist, had no practical or formal experience in landscaping.

[2] Throughout the Special Master's Report, the Company was referred to interchangeably as "the LLC," "BRB," or "the nursery."

There is no dispute between the parties that Elite employees frequently worked for the Company and, in turn, the Company was billed on a per hour basis for these services. There also is no dispute that Leslie Gibbs ("Gibbs") was an Elite employee who provided bookkeeping services to the Company and the Company was charged for each hour of services so provided. While the parties disputed whether Plaintiffs were aware of the markup for each hour an Elite employee worked for the Company, this dispute was resolved against King and is not challenged on appeal.

Ms. Shell testified that at the end of each business day, she and King would count the cash and receipts and reconcile any discrepancies. The cash and receipts were then placed into a bank bag and given to King, who took it across the street to his house and office. Then, according to King's brief on appeal, either he "or one of his employees at Elite Landscaping would pick up the receipts and make the deposit on behalf of the LLC.… The person who normally picked up the receipts and deposited them was the bookkeeper for Elite Landscaping, namely, Leslie Gibbs."

Plaintiffs' called as an expert witness Van T. Elkins ("Elkins"), a certified public accountant. Elkins testified that his analysis and audit of the Company's records revealed $26,209 in cash taken in by the Company but never deposited into the Company's bank account or otherwise accounted for. The Special Master credited Elkins' testimony and concluded there was $26,209 in missing funds, a finding which likewise is not challenged on appeal.

King testified he fired Gibbs in June of 2002 and brought criminal charges against her for embezzling $38,800 in funds from Elite. King discovered this alleged embezzlement at Elite approximately one year after the Company closed. King testified that he had no direct knowledge of Gibbs' embezzling from the Company. The Special Master noted that King did not state whether any charges had been brought against Gibbs relative to the missing funds belonging to the Company.

The Special Master concluded that because King was the Chief Manager of the LLC, he held fiduciary duties to the LLC and Plaintiffs. The Special Master then stated:

> The Special Master notes that Mr. King was not only the chief manager of this business but was also the member entrusted with the maintenance of the company books and accounts, a responsibility which he then delegated to Leslie Gibbs. Apparently, Mr. King did not discover any embezzlement from BRB and nowhere in his testimony has he indicated any attempts to identify any embezzlement or to recover any funds. The Special Master finds and holds that Mr. King was entrusted with cash funds from the operation of the LLC's business and was responsible for their safekeeping. The Special Master further finds that Mr. King was negligent in entrusting these funds to another party and then failing to properly review records to verify the entrusted funds were actually deposited. Mr. King was the recipient of the daily sales totals showing the amount of cash sales as well as the bank accounts and was the sole member of the LLC with

any ability to control the safekeeping of cash and to verify its proper deposit when the bank statements were received or through deposit receipts.

The Special Master finds that the sum of $26,209.00 in company cash is missing and that such funds are missing as a direct result of Mr. King's negligence or breach of fiduciary duties to the LLC.

After concluding there was a total of $26,209 in missing funds resulting from King's negligence and negligent entrustment of these funds to Gibbs, the Special Master set about to determine how these funds would have been distributed during dissolution if they had not been missing. The Special Master concluded that these funds would have been divided on a pro-rata basis in accordance with the LLC members' capital contributions. According to the Special Master, Plaintiffs' capital contributions totaled 80.06% of the total capital contributions to the LLC. Therefore, Plaintiffs were entitled to 80.06% of $26,209, or $20,982.92.

As noted previously, Plaintiffs sought an award of attorney fees, expert witness fees, and costs. The Special Master noted that he had the equitable power to award these expenses and fees pursuant to Tenn. Code Ann. § 48-230-105. The Special Master then reviewed the proof, such as King's arbitrarily billing the Company $15.00 per hour for work performed by Elite employees, regardless of what the Elite employee actually was paid. The Special Master also took into consideration other factors, such as King's refusal to turn over some of Plaintiffs' personal property which, in effect, left Plaintiffs "little choice but to bring this action for dissolution and liquidation." In addition, the Special Master stated that King's control over the accounting and financial records, self-dealing, and failure to keep proper records contributed substantially to the cost of the litigation. The Special Master concluded that King should be held responsible for one-half of Elkins' total expert witness fees of $14,810. The Special Master also concluded King should be responsible for one-half of Plaintiffs' attorney fees incurred while assisting Elkins. The total amount of attorney fees incurred by Plaintiffs was $11,426. Of this amount, the Special Master attributed $6,000 to trial and other assistance provided to Elkins, thereby resulting in King being responsible for one-half of the $6,000, or $3,000. Thus, of the total $26,236 in expert witness fees and attorney fees incurred by Plaintiffs, the Special Master held King liable only for $10,405. The Special Master's Report ended with the recommendation that the costs, including the fee of the Special Master, be assessed one-half to Plaintiffs and one-half to King.

Although Plaintiffs and King filed objections to the Special Master's Report, on August 7, 2003, the Trial Court confirmed the Special Master's Report in all respects.[3] Plaintiffs and King appeal raising several issues. King argues the Trial Court erred when it held him liable under the doctrine of respondeat superior for embezzlement committed by Gibbs. King also argues the Trial Court erred when it held him liable "as a result of negligence for embezzlement committed by" Gibbs. Plaintiffs claim they should be awarded their entire attorney fees and expert witness fees. They further argue that King should be responsible for all the costs, including the Special Master's fee. Plaintiffs also request their attorney fees incurred on this appeal.

**Discussion**

With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). As to factual issues, concurrent findings of fact by the Special Master and Trial Court are "conclusive on appeal, except where the finding is on an issue not appropriate for referral, where it is based on an error of law or a mixed question of fact and law, or where the factual finding is not based on material evidence." *Pendola v. Butler*, No. M2002-00131-COA-R3-CV, 2003 Tenn. App. LEXIS 535, at **11-12 (Tenn. Ct. App. July 31, 2003), *no appl. perm. appeal filed* (quoting *Aussenberg v. Kramer,* 944 S.W.2d 367, 370 (Tenn. Ct. App. 1996)). *See also* Tenn. Code Ann. § 27-1-113 (2000). If the record contains any material evidence to support the concurrent findings of fact by the Special Master and the Trial Court, these findings of fact must be affirmed. *Pendola*, 2003 Tenn. App. LEXIS 535, at * 12.

We first will address King's argument that the Trial Court erred when it held him liable under the doctrine of respondeat superior for the embezzlement committed by Gibbs. In *Johnson v. LeBonheur Children's Medical Center*, 74 S.W.3d 338 (Tenn. 2002), our Supreme Court discussed the doctrine of respondeat superior as follows:

> When an agency relationship exists, the principal may be bound by the acts of the agent performed on the principal's behalf and within the actual or apparent scope of the agency. *White*, 33 S.W.3d at 724. In Tennessee, the doctrine of respondeat superior permits the master/principal to be held liable for the negligent actions of his servant/agent. *Smith v. Henson*, 214 Tenn. 541, 551, 381 S.W.2d 892, 897 (1964). To hold the master/principal vicariously liable, "it is enough that the servant or agent was acting in the business of his

---

[3] King filed a motion for summary judgment and statement of undisputed material facts approximately one month after the trial was completed. The Special Master's Report was issued approximately five weeks later. Plaintiffs responded to the motion for summary judgment relying heavily on the Special Master's Report. When the Trial Court confirmed the Special Master's Report, it also denied King's motion for summary judgment. King does not appeal the denial of this motion.

superior." *White*, 33 S.W.3d at 725 (quoting *Kinnard v. Rock City Const. Co.*, 39 Tenn. App. 547, 551, 286 S.W.2d 352, 354 (1955)).

*Johnson*, 74 S.W.3d at 343.

King argues that Gibbs was acting outside the scope of her employment when she embezzled the money and, therefore, respondeat superior does not apply. Plaintiffs disagree for several reasons. First, relying on King's testimony that he had no direct knowledge that Gibbs had embezzled from the Company, Plaintiffs claim the proof does not support a conclusion that Gibbs actually stole the money or was acting outside the scope of her employment. Plaintiffs further argue that even if Gibbs did steal the money, King still is responsible under respondeat superior because King gave Gibbs express authority to handle the cash deposits.

Gibbs is not a party to this lawsuit and was not called as a witness at trial and, therefore, we do not have the benefit of her version of what happened to the missing funds, assuming she has an explanation. Furthermore, while King testified that he brought criminal charges against Gibbs for embezzling from Elite, we do not know the outcome of those proceedings. Gibbs may have been found not-guilty, assuming the matter went to trial. Even if Gibbs was found guilty of embezzling from Elite, that would not *ipso facto* mean she embezzled from the Company. With all these unanswered questions, we do not believe the present litigation is the proper forum for a judicial determination of whether Gibbs stole the missing funds. Having said that, it seems clear to us that the Trial Court never found that Gibbs embezzled the missing funds or that King was vicariously liable for her conduct. Instead, the Trial Court found that "$26,209.00 in company cash [was] missing and that such funds [were] missing as a direct result of Mr. King's negligence or breach of fiduciary duties to the LLC." This is not a finding that King is vicariously liable for Gibbs' conduct, but rather a finding of liability based on King's own independent negligence. As found by the Special Master and confirmed by the Trial Court, "King was the recipient of the daily sales totals showing the amount of cash sales as well as the bank accounts and was the sole member of the LLC with any ability to control the safekeeping of cash and to verify its proper deposit when the bank statements were received or through deposit receipts." The record certainly contains material evidence to support these concurrent findings of fact. Accordingly, we conclude King's first issue on appeal is without merit because the Trial Court found King liable not under the doctrine of respondeat superior for Gibbs' alleged embezzlement, but rather because of his own independent negligence and breach of fiduciary duty.

King's second issue is whether the Trial Court erred when it held him liable "as a result of negligence for embezzlement committed by" Gibbs. We again emphasize there was no finding by the Trial Court that Gibbs actually embezzled the money. What the Trial Court did conclude was that King had fiduciary duties to the LLC and Plaintiffs because he was the Company's Chief Manager. King also was the member entrusted with maintenance of the company books and accounts, as well as the daily cash funds from the operation of the business. King delegated all of these responsibilities to Gibbs. The finding of liability on the part of King resulted from the Trial

Court's conclusion that he "was negligent in entrusting these funds to another party and then failing to properly review records to verify the entrusted funds were actually deposited."

Under certain circumstances, a manager of an LLC is permitted to delegate his or her duties. Tenn. Code Ann. § 48-241-110 provides as follows:

> **Delegation.** – Unless prohibited by the articles, the operating agreement, or by a resolution:
>
>   (1)  Adopted by the affirmative vote of the governors present at a duly held meeting of a board-managed liability company; or
>
>    (2)   Approved by the affirmative vote of a majority of the membership interest entitled to vote at a duly held meeting of the members of a member-managed LLC;
>
> a manager elected or appointed may, without further approval, delegate some or all of the duties and powers of an office to other persons. *A manager who delegates the duties or powers of an office remains subject to the standard of conduct for a manager with respect to the discharge of all duties and powers so delegated.* (emphasis added).

The standards governing the conduct of a manager of an LLC are addressed in the next statutory section, Tenn. Code Ann. § 48-241-111, which provides in relevant part as follows:

> **Standard of conduct.** – (a) GENERAL. A manager shall discharge the duties of an office in good faith, in a manner the manager reasonably believes to be in the best interests of the LLC, and with the care an ordinarily prudent person in a like position would exercise under similar circumstances.…
>
>   (b) RELIANCE PERMITTED.  In discharging such duties, a manager is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by:
>
> * * *
>
>     (2) Legal counsel, public accountants, or other persons as to matters the officer reasonably believes are within the person's professional or expert competence.

(c) WHERE RELIANCE NOT PERMITTED.  A manager is not acting in good faith who has knowledge concerning the matter in question that makes reliance otherwise permitted by subsection (b) unwarranted.

(d) LIMITATION ON LIABILITY.  A manager is not liable for any action taken as a manager, or any failure to take any action, if the manager performed the duties of the office in compliance with this section.

(e) EFFECT OF DELEGATION.  A person exercising the principal functions of an office or to whom some or all of the duties and powers of an office are delegated pursuant to § 48-241-110 is considered a manager for purposes of this section.

King argues that his delegation of responsibilities to Gibbs, including the responsibilities for handling cash and maintaining the Company books and accounts, was done in good faith.  King further argues that pursuant to Tenn. Code Ann. § 48-241-111(b)(2), he was entitled to rely on the financial accounts maintained by Gibbs, and, therefore, he cannot be held liable under Tenn. Code Ann. § 48-241-111(d).

For present purposes only, we will assume that King was entitled to rely on financial data prepared by Gibbs and § 48-241-111(b)(2) applies.[4]  The issue then becomes whether an LLC's Chief Manager can delegate in a wholesale manner all responsibility for handling cash and preparing financial reports, etc., and *never* have any duty to inspect the reports or otherwise take any action to verify their accuracy.  In his brief on appeal, King asserts that he has had no training as a bookkeeper or accountant and "[t]o expect [him] to discern the existence of a problem is unreasonable and not supported by any evidence."  We disagree for two reasons.  First, whether King had the expertise to discern a problem cannot be answered because he never tried.  Second, it is undisputed that at the end of each day, King knew exactly how much cash had been taken in and should have been deposited.  All he had to do was, from time to time, check the deposit receipts to verify that the money had been deposited.  This is as basic as it gets with a bank account and hardly requires any specialized training or expertise.

We do not believe § 48-241-111(b)(2) authorizes a Chief Manager, who is responsible for maintaining the company books, accounts, and handling cash to completely delegate all of this responsibility and never take *any* steps to verify that the person to whom this significant authority has been delegated is doing their job correctly.  We also note, not surprisingly, that King failed to produce any proof that either depositing funds into a bank account or looking at a deposit slip to see

---

[4] King does not point us to any testimony or other proof in the record setting forth Gibbs' professional or expert competence.  Because King hired her and gave her the title of "bookkeeper" hardly would seem sufficient.  Without such testimony or proof, we cannot determine whether King's reliance on Gibbs was reasonable.

if the amount given to be deposited equaled the amount actually deposited require any particular "professional or expert competence" as required by § 48-241-111(b)(2). Therefore, we hold there is material evidence to support the Trial Court's conclusion that King was negligent and violated his fiduciary obligations to the LLC and Plaintiffs. We affirm the judgment of the Trial Court on this issue and need not decide the issue of whether the Trial Court properly found King had negligently entrusted the cash to Gibbs.

Plaintiffs argue that the Trial Court erred by not holding King responsible for all of their expert witness fees, attorney fees, and all of the costs, including the fee of the Special Master. Tenn. Code Ann. § 48-245-903 discusses the procedure for dissolution of an LLC. Subsection (d) of that statutory section provides as follows:

> BOND AND EXPENSES. In a proceeding for dissolution by a member, the petitioner shall execute and file in the proceeding a bond, with sufficient surety, to cover the defendant's probable costs, including reasonable attorney fees, in defending the petition. The court shall determine the amount of the bond and may award to any party its reasonable costs, including attorney fees, if it finds for such party in the proceeding.

Tenn. Code Ann. § 48-245-903(d).

The Trial Court further noted that an award of attorney fees and other expenses also was authorized by Tenn. Code Ann. § 48-230-105 which provides:

> **Equitable remedies.** – If an LLC or a manager or governor of the LLC violates a provision of chapters 201-248 of this title, a court in this state may, in an action brought by a member of the LLC, grant any equitable relief it considers just and reasonable in the circumstances and award expenses, including counsel fees and disbursements, to the member.

Because an award of attorney fees, etc., under these statutes is discretionary, we review the Trial Court's judgment on this issue under the abuse of discretion standard. As set forth previously, the Trial Court found King had arbitrarily and improperly billed the Company $15.00 per hour for work performed by Elite employees. King also refused to turn over some of Plaintiffs' personal property leaving Plaintiffs "little choice but to bring this action for dissolution and liquidation." The Trial Court further stated that King's control over the accounting and financial records, self-dealing, and failure to keep proper records contributed substantially to the cost of the litigation. On top of all of this, we have affirmed the Trial Court's finding that King was negligent and breached his fiduciary obligations to the LLC and Plaintiffs. In light of these findings, we believe the Trial Court erred when it concluded King should be responsible only for one-half of Elkins' expert witness fees and one-half of Plaintiffs' attorney fees incurred while assisting Elkins.

-10-

We modify the Judgment to hold King responsible for the entire $14,810 expert witness fee as well as the entire $6,000 in attorney fees attributable to assistance provided to Elkins. We also modify the Judgment to hold King responsible for all costs, including the fees of the Special Master. With regard to Plaintiffs' remaining attorney fees incurred prior to this appeal, since other issues were presented at trial as to which King had some success, we do not believe the Trial Court erred in holding Plaintiffs responsible for the remainder of their attorney fees. In all other respects, the judgment of the Trial Court is affirmed. We also believe it appropriate under the statute to exercise our discretion to award Plaintiffs their expenses, including counsel fees, incurred in this appeal with this amount to be determined by the Trial Court on remand.

## **Conclusion**

The judgment of the Trial Court is affirmed as modified, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. Costs on appeal are assessed against the Appellant D. Scott King and his surety.

_____
D. MICHAEL SWINEY, JUDGE