IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 21, 2010 Session

**CATHERINE M. LOVE,** as next friend and natural mother of Savannah Love, a minor child and daughter of Rex Bryan Peterson, deceased, ET. AL.
**v.**
**DORIS LAKINS WOODS**

**Direct Appeal from the Circuit Court for Blount County**
**No. L16199      William D. Young, Judge**

_____

**No. E2009-02385-COA-R3-CV - FILED NOVEMBER 4, 2010**

_____

This case arises from the trial court's denial of Plaintiff/Appellants' motion to enforce a settlement agreement. Appellants, the surviving children of decedent, filed a wrongful death claim against the Appellee herein, the driver of a car involved in the accident that killed decedent. During negotiations, Appellee/Defendant's attorney proposed a settlement in the amount of Appellee's insurance policy limit, which Appellee's attorney misstated to be $100,000, when, in fact, the policy limit was $50,000. The trial court denied Appellants' motion to enforce the $100,000 settlement finding that the settlement was not enforceable, as it failed to contain certain material terms of the agreement. We conclude that the trial court failed to determine whether an agency relationship existed between the Appellee's attorney and the insurance company and also whether the insurance company is required to be a party to this litigation. Vacated and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Christopher T. Cain, Knoxville, Tennessee, for the appellants, Catherine M. Love, Rex Bryan Peterson and Michael Corey Peterson.

Jon M. Cope, Mary Jo Mann, Knoxville, Tennessee, for the appellee, Doris Lankins Woods.

**OPINION**

On December 1, 2007, Rex Peterson was killed when the motorcycle he was operating was struck by an automobile driven by the Appellee, Doris Lakins Woods. Mr. Peterson was survived by three children: Rex Bryan Peterson, an adult; Michael Corey Peterson, an adult; and Savannah Love, a minor.

On May 2, 2008, Catherine M. Love, as next friend and natural mother of Savannah Love, Rex Bryan Peterson, and Michael Corey Peterson (together "Plaintiffs," or "Appellants") filed a wrongful death suit against Ms. Woods. The complaint alleged that Ms. Woods was guilty of common law negligence, and negligence *per se* in her operation of the automobile, and that this negligence was the proximate cause of Mr. Peterson's death. On June 13, 2008, Ms. Woods filed an answer to the complaint, wherein she denied any liability, and asserted comparative negligence on the part of Appellants' decedent, and another motorcycle driver.

In an Affidavit that was made part of the appellate record, Appellants' attorney, Christopher T. Cain, averred, in relevant part, that:

> 2. In November of 2008, I was informed by Mary Jo Mann ("Mann"), counsel for the Defendant and Defendant's insurer (Tennessee Farmers Mutual Insurance Company ("Farmers")) that Defendant's policy limits were $100,000. I was not provided either the Policy or its Declarations Page.
>
> 3. On or about February 8, 2009, Mann, on behalf of Farmers, offered the $100,000 policy limits in settlement of the captioned matter, exclusive of the property damage claim. This offer was accepted and confirmed by the undersigned by letter dated February 9, 2009.
>
> 4. On February 9, 2009, Mann, on behalf of Farmers, wrote "to confirm, in principal, that we have agreed to settle the Peterson wrongful death for policy limits of $100,000." .... This letter reflects an open copy to Chris Rucker ("Rucker"), an adjuster for Farmers.
>
> 5. On or about March 18, 2009, I was informed (first by Rucker, then by Mann), that the limits of the Policy were $50,000, rather than $100,000. I was also told by Mann that Farmers was not going to pay the $100,000 and would only pay $50,000. Shortly thereafter, for the first time, I was provided the

Declarations Page for the Policy, which reflected policy limits of $50,000.

On March 27, 2009, Appellants filed a motion and memorandum to enforce settlement, seeking to enforce the alleged settlement in the amount of $100,000. The February 9, 2009, letter from Mann, which is referenced in paragraph four of Mr. Cain's Affidavit, *supra*, was attached to the motion to enforce settlement. This letter provides, in pertinent part, as follows:

> This letter is to confirm, in principal, that we have agreed to settle the Peterson wrongful death for policy limits of $100,000.
>
> \*                              \*                              \*
>
> As I have mentioned, because Savannah Love is a minor, the settlement will have to be court approved. I will gladly prepare the necessary documents once you provide me with the information as to how the settlement proceeds are to be divided.
>
> Please keep in mind that [] T.C.A. §34-1-101, *et seq*. requires the appointment of a guardian and posting of a bond if the amount paid to the minor exceeds $10,000. Your clients may want to consider placing, at least, some of the minor's proceeds in an annuity which will pay out after Savannah reaches 18 to avoid this additional administrative procedure. I will gladly discuss this with you in more detail and Tennessee Farmers would be able to provide an annuity.

In their motion to enforce settlement, Appellants contend that any mistake as to the policy limit was unilateral on the part of Appellee's counsel or insurer. Because Farmers drafted the policy at issue and at least two of its agents (i.e., Appellee's attorney and adjuster) reviewed (or should have reviewed) the matter before offering $100,000 in settlement of Appellants' claims, Appellants contend that Farmers / Appellee should bear the mistake and settlement should be enforced for $100,000. On May 7, 2009, Ms. Woods filed a response to Appellants' motion to enforce settlement, wherein she argued, in relevant part, as follows:

> After limited discovery, [Ms. Woods'] counsel obtained authority from Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers"), [Ms. Woods'] insurer, to offer the...policy limits to Plaintiffs for a full and complete settlement.

Shortly thereafter, in late January or February, 2009, [Ms. Woods'] counsel called Plaintiffs' counsel and left a voicemail stating that they were prepared to offer the policy limits, but mistakenly stated them to be one hundred thousand dollars.... Subsequently, counsel had a telephone conference wherein plaintiffs' counsel accepted the policy limits offer and he raised the issue that his client's property damage claim was still unresolved and needed to be addressed.

[Ms. Woods' attorney] sent a letter to Plaintiffs' counsel, dated February 9, 2009, memorializing the conversation regarding settlement stating specifically "this letter is to confirm **in principle**, that we have agreed to settle the Peterson wrongful death **for policy limits** of $100,000." Moreover, the letter itself detailed several material terms that still needed to be agreed upon before a final settlement could be reached. These included: the terms by which the settlement was to be divided between the three separate Plaintiffs had not been discussed or agreed upon; the terms of the annuity for Savannah had not even been discussed, much less finalized; and the terms by which a legal guardian for Savannah was to be appointed had not been finalized. Further, neither the letter nor the telephone messages had finalized, or even discussed, the timetable for the disbursement of the settlement. Furthermore, and as stated in the letter, due to a minor being involved, any settlement agreement must first be approved by the Court before becoming valid.

Finally, [Ms. Woods'] counsel's letter clearly established that the Defendant had no intention to be bound until the execution of a written formal contract stating, "I will gladly prepare the necessary documents once you provide me with the information as to how the settlement proceeds are to be divided."

(citations to record omitted) (emphasis in original).

The motion to enforce settlement was heard by the trial court on May 11, 2009. There is no transcript of this proceeding in the appellate record. On June 16, 2009, the court entered an order, denying Appellants' motion to enforce the $100,000 settlement. The trial

court's May 28, 2009, memorandum letter is incorporated, by reference, into the June 16th order.  The court's memorandum provides, in relevant part, as follows:

> On February 8, 2009, Counsel for Tennessee Farmers Mutual Insurance Company offered to settle the case for the insurance company's policy limits, which Counsel for Tennessee Farmers was informed to be $100,000.  Thereafter, on March 18, 2009, Tennessee Farmers Mutual Insurance Company advised Counsel for Defendant that the limits were $50,000.00 rather than $100,000.00.  Plaintiffs argue that the mistake was a mutual mistake and that the Court should enforce a settlement of $100,000.00.
>
> Defendant argues that the offer tendered on February 9, 2009 was conditioned upon several material terms that still needed to be agreed upon before a final settlement could be reached.  Counsel for Defendant offered to prepare necessary documents to complete the settlement when Plaintiffs furnished the information requested.  Prior to this information being furnished to Counsel for Defendant, Defendant discovered the policy limits to be only $50,000.00 and informed Plaintiffs' Counsel of that fact.
>
> The Court has read with great interest the briefs filed by respective  Counsel and has concluded that the "settlement agreement" is unenforceable inasmuch as it was incomplete as to several material terms and conditions, the subject of which was involved in the settlement negotiations when the $50,000.00 policy limits were discovered.
>
> Accordingly, the Court most respectfully overrules Plaintiffs' Motion to Enforce Settlement and dismisses same.

On June 15, 2009, Appellants filed a renewed motion and memorandum to enforce settlement.[1]  As stated in the renewed motion, the purpose thereof was to:

---

[1] It appears that the Appellants' renewed motion and memorandum to enforce settlement was filed one day prior to the entry of the June 16, 2009 order, denying the initial motion to enforce settlement.  From our reading of the record, and from the parties' statements in their respective appellate briefs, we infer that

(continued...)

(1) supplement the factual record to address the Court's misapprehension that requested information was not provided prior to Farmers discovering its error as to policy limits; (2) clarify that Plaintiffs' position that the mistake as to policy limits was Defendant's unilaterally, and, even if it was a "mutual mistake," Defendant should bear the burden of the mistake as to the policy limits; and (3) reiterate that the settlement agreement was not a "contract to make a contract" and that no material terms were missing at the time Farmer discovered the mistake.

Attached to the Appellants' renewed motion were several letters that passed between Appellants' counsel and Appellee's counsel: (1) letter dated February 9, 2009, from Appellants' counsel, stating that "[t]his letter will confirm that we have settled the wrongful death portion of the claim for $100,000.00, your client's policy limits." The letter further states that the settlement check should be made payable jointly to the Appellants and their attorney, and gives the applicable tax identification number. The letter further indicates that the property damage claim still needs to be addressed; (2) letter dated February 23, 2009, from Appellants' counsel, which letter primarily concerns the property damage portion of the settlement. Concerning the settlement for the minor child, the February 23, 2009, letter indicates that Appellants' attorney has spoken to the child's mother and that the mother "has an interest in placing [the child's] proceeds in an annuity which would pay out after [the child] reaches the age of 18. In that light, and as you offered, please provide me with the information on same using proceeds of $20,000.00 to fund the annuity;" and (3) letter dated March 3, 2009, from Appellee's counsel, which letter acknowledges receipt of the information regarding the property damage claim.

On September 10, 2009, Appellee filed a response to Appellants' renewed motion to enforce settlement, arguing, in pertinent part, that, "[w]hen the mutual mistake [concerning the policy limits] came to light [i.e., March 18, 2009], there were specific and material terms of the settlement that were still pending." These terms allegedly included: (1) the division of proceeds among three plaintiffs; (2) establishment or not of a guardianship for the minor; (3) the preparation of the settlement documents necessary for obtaining court approval; (4) the terms and conditions of a structured settlement for the minor; (5) the preparation of documents setting up a structured settlement for the minor, including a qualified Assignment;

---

[1](...continued)
the premature filing of the renewed motion to enforce settlement arose from the fact that the trial court orally denied the initial motion from the bench, and then entered a memorandum letter on May 28, 2009. It is not fatal to Appellants' renewed motion that it was filed one day prior to the entry of the order on the first motion; however, we note the discrepancy in the filing dates to avoid any confusion in the Opinion.

and (6) actually obtaining court approval for the minor's claim.

The renewed motion to enforce settlement was heard on September 11, 2009.[2] At the end of the hearing, the court denied the motion from the bench. Thereafter, the parties entered into a joint petition for approval of the minor child's portion of the settlement. This petition specifically preserves the Appellants' right to appeal the trial court's denial of the motion to enforce settlement in the amount of $100,000. In relevant part, the joint petition provides for "full and final settlement and satisfaction" of all claims, in the amount of $50,000. The petition goes on to outline the proposed disbursement of the settlement funds. Based upon their agreement, the parties requested that the court approve and ratify the minor's portion of the settlement, as required by Tenn. Code Ann. §34-1-101, *et seq*.

A Final Order was entered on November 12, 2009, which order denies Appellants' renewed motion to enforce settlement, preserves Appellants' right to appeal the issue of denial of the motion to enforce the $100,000 settlement, and adopts the $50,000 settlement reached by the parties as set out in their joint petition, *supra*, pending the instant appeal. Concerning the minor child's portion of the settlement, the trial court specifically found that the $50,000 settlement was "fair, reasonable, prudent, and in the [child's] best interest, [pursuant to Tenn. Code Ann. § 34-1-101 *et seq*.]. Having preserved the right to appeal, Appellants bring the following issue for our review:

> Whether the Circuit Court erred in denying Plaintiffs' Motion
> and Renewed Motion to Enforce Settlement Agreement in the
> face of an unequivocal settlement offer of $100,000 and
> Plaintiffs' unequivocal acceptance of same?

It is well settled that "[t]he resolution of disputes by agreement of the parties is to be encouraged." *Harbour v. Brown*, 732 S.W.2d 598, 599 (Tenn. 1987). "The purpose of compromise is to avoid trial of sharply disputed issues and to dispense with wasteful litigation." 15A C.J.S. Compromise & Settlement § 1 (2002). It is well established that "[a] compromise and settlement agreement is merely a contract between the parties to litigation and, as such, issues of enforceability of a settlement agreement are governed by contract law." *Envtl. Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 539 (Tenn. Ct. App. 2000); *see also* *Bennecker v. Fickeissen*, No. E2004-02129-COA-R3-CV, 2005 WL 3017609 (Tenn. Ct. App. Nov. 10, 2005); *O'Mary v. Protech Builders, Inc.*, No. E2000-02539-COA-R3-CV, 2001 WL 648924 (Tenn. Ct. App. May 12, 2001); *Moxham v. Crafton*, No. M2000-00803-COA-R3-CV, 2001 WL 468669 (Tenn. Ct. App. May 4, 2001). "[A] consent judgment does not represent the reasoned decision of the court but is merely the

---

[2]There is no transcript of the September 11 hearing in the appellate record.

agreement of the parties, made a matter of record by the court." **Harbour**, 732 S.W.2d at 599-600 (citing **Van Donselaar v. Van Donselaar**, 249 Iowa 504, 87 N.W.2d 311, 314 (Iowa 1958)). However, "[a] compromise is the law between the parties and a judicially-entered settlement agreement that becomes part of the stipulation that ends the litigation has the force and effect of a judicial decree." 15A C.J.S. Compromise & Settlement § 33 (2002); *see also* **Moxham**, 2001 WL 468669, at *6 ("We note that a settlement agreement signed by all the parties may be enforceable like other contracts, but it does not become the judgment of the court until it receives the approval of the trial judge."). Thus, it is well settled that the courts of this state retain the inherent power to enforce settlement agreements. *See* **Bennecker**, 2005 WL 3017609, at *3.

We note, at the outset, that this appeal arises from the denial of a motion to enforce a settlement agreement, as opposed to a breach of contract action. As set out in 15A Am. Jur. 2d Compromise and Settlement § 49 (2010):

> When a party fails to comply with its obligations under a settlement agreement, the opposing party may seek in equity to enforce the terms of the agreement. The decision whether to enforce a settlement is one committed to the court's discretion. A party to a settlement seeking to redress a claimed breach, if the court case already has been dismissed, may bring an independent action for breach of contract; if the case has not been dismissed, the party may move for enforcement. A court has the power to enforce the terms of a settlement agreement if the agreement either is incorporated into the court's final judgment or provides expressly for continuing jurisdiction over disputes arising out of the settlement. Summary enforcement of a settlement may be permitted by statute, but is inappropriate when there is a material dispute about the existence of a settlement agreement.

(footnotes omitted).

In the instant case, there is an initial issue, which must be addressed, *sua sponte*, before we can reach Appellants' stated issue. Specifically, this Court questions whether Appellee's attorney, Mary Jo Mann, had the authority to bind Farmers' to a settlement. This inquiry also raises the issue of whether all necessary parties were before the trial court.

**Agency**

In support of their motion to enforce settlement, Appellants filed the affidavit of their attorney, Christopher Cain. In his affidavit, Mr. Cain states that he "was informed by Mary Jo Mann ("Mann"), ***counsel for Defendant and Defendant's insurer***...that Defendant's policy limits were $100,000." (emphasis added). From this statement, it appears that Appellants were proceeding under the assumption that Ms. Mann was, in fact, an agent for Farmers, although they do not specifically state that Ms. Mann has the authority to enter the settlement. This assumption, however, is disputed by Ms. Mann in her own affidavit, filed in support of Appellee's opposition to Appellants' motion to enforce settlement. Therein, Ms. Mann states that she "represent[s] Doris Lakin Woods, the defendant, in the above-captioned matter." There is no indication by Ms. Mann that she represents Farmers. Consequently, in order for Ms. Mann to bind Farmers to a settlement, there would have to be a finding of some agency relationship between Ms. Mann and Farmers. As discussed in 12 Samuel Williston, Treatise on the Law of Contracts § 35:11 (Richard A. Lord ed., 4th ed. 2010):

> An agent has power to make contracts which will bind his principal not only when actually authorized to do so by express words or inference of fact, but also in cases where the principal did not intend to confer such authority on the agent but, nevertheless, held out to the public or to the person with whom the agent dealt an appearance of authority.

> Apparent authority, or ostensible authority, as it is also termed, is that which, though not actually granted, the principal permits the agent to exercise, or which he holds him out as possessing.

> Describing the distinction between actual or "real" authority, either express or implied, on the one hand, and apparent authority on the other, one court said:

> > "We recognize the distinction between real and apparent authority. Real authority exists when the agent is expressly authorized by the principal to act or when the actual authority to act can be implied from the facts. In contrast, apparent authority arises when the principal, through words

or conduct, leads a third person to
the reasonable belief that the agent
is authorized to act when, in fact,
he is not."

*Id*. (footnotes omitted).

From the appellate record, we are unable to determine the exact nature of the relationship (if any) between Ms. Mann and the insurer.[3] Although, in her affidavit, Ms. Mann states that she "obtained settlement authority of policy limits from my client's liability insurance carrier, [Farmers]," this fact does not, *ipso facto*, conclusively establish that Ms. Mann was acting as Farmers' agent.

Various relationships can exist between an attorney, an insuror, and an insured. *See* ***Givens v. Mullikin ex rel. Estate of McElwaney***, 75 S.W.3d 383 (Tenn. 2002). When an insurance company hires an attorney to represent its insured (which may or may not be the situation in the instant appeal), the relationship of the insurer and the attorney is that of principal to independent contractor. ***Givens***, 75 S.W.3d at 393. While the rule is that a principal is not generally liable for the tortious actions of an independent contractor, *see, e.g.,* ***Hutchison v. Teeter***, 687 S.W.2d 286, 287 (Tenn. 1985); ***Carr by Carr v. Carr***, 726 S.W.2d 932, 933 (Tenn. Ct. App.1986), this rule is subject to many exceptions, and a principal/independent contractor relationship does not, *ipso facto*, relieve the insurer of all liability from the attorney's acts or omissions. ***Givens***, 75 S.W.3d at 394. For instance, "when one directs, orders, or knowingly authorizes another to perform an act, then the principal is liable for the harm proximately caused by those acts." *Id*. at 395 (citing ***White v. Revco Disc. Drug Ctrs., Inc***., 33 S.W.3d 713, 723 (Tenn. 2000); ***Kinnard v. Rock City Constr. Co.***, 39 Tenn. App. 547, 551, 286 S.W.2d 352, 354 (1955)). Moreover, "liability for the directed or authorized acts of an agent may follow irrespective of whether other separate agency relationships also exist." ***Givens***, 75 S.W.3d at 395. However, an insurer may not be "held vicariously liable for the acts or omissions of its hired attorney based merely upon the existence of the employment relationship alone." ***Id.*** at 395-96.

In the case at bar, there is some indication that Farmers directed Ms. Mann to act on its behalf in offering the $100,000 settlement. However, the appellate record does not provide sufficient evidence from which to conclude the exact nature of Ms. Mann's relationship to Farmers regarding this settlement offer. Consequently, the question of Ms. Mann's agency must be resolved in order to determine whether Ms. Mann had the authority

---

[3] It is well settled that this Court's review is limited to the appellate record and it is incumbent upon the appellant to provide a record that is adequate for a meaningful review. Tenn. R. App. P. 24(b).

to bind Farmers to a settlement. If, upon remand, the trial court determines that an agency relationship existed, so as to give Ms. Mann either the real or apparent authority to act on behalf of Farmers, then, and only then, should the court address the questions of the extent of that agency, whether the agreement was fully formed, and whether a mistake, mutual or unilateral, should result in Farmers being bound by the purported $100,000 settlement.

## Necessary Parties

The trial court must also determine whether Farmers is an indispensable party to this suit. Appellants' complaint, filed on May 2, 2008, is filed only against Ms. Woods. More importantly, the motion to enforce settlement (and the renewed motion), which are the subject of the instant appeal, are filed only against Ms. Woods. Although Appellants' motion specifically states that they are seeking "to enforce the terms of an agreement entered into by and between Plaintiffs and the Defendant's insurer, Tennessee Farmers Mutual Insurance Company ("Farmers"), for the sum of $100,000," Farmers is not a party to this suit. Consequently, upon remand, the trial court must also address how Appellants can enforce an alleged settlement against an unnamed defendant (i.e., Farmers), who is not a party to the suit.

Tenn. R. Civ. P. 19.01 provides, in relevant part, as follows:

> **Persons to Be Joined if Feasible**. — A person who is subject to service of process shall be joined as a party if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person properly should join as a plaintiff but refuses to do so, he or she may be made a defendant, or in a proper case, an involuntary plaintiff.

Failure to join Farmers in this suit, however, is not fatal to Appellants' case, as Tenn. R. Civ. P. 21 states:

> Misjoinder of parties is not ground for dismissal of an action.

Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

For the foregoing reasons, we vacate the order of the trial court, denying enforcement of the alleged settlement agreement. We remand the matter to the trial court for such further proceedings as may be necessary in light of this Opinion. Costs of this appeal are assessed one-half to the Appellants, Catherine M. Love, as next friend and natural mother of Savannah Love, a minor, Rex Bryan Peterson, Michael Corey Peterson, and their surety, and one-half to the Appellee, Doris Lakins Woods, for which execution may enter if necessary.

_____
J. STEVEN STAFFORD, JUDGE